Filed:  September 1, 2011

IN THE SUPREME COURT OF THE STATE OF OREGON

KEITH L. DROLLINGER,

Petitioner on Review,

v.

GORDON MALLON,
JOHN LAMBORN, ROBERT RASCHIO,
and MALLON LAMBORN AND RASCHIO, PC,

Respondents on Review.

(CC 08127040L; CA A142452; SC S058839)

En Banc

On review from the Court of Appeals.*

Argued and submitted May 5, 2011.

Paul J. C. Southwick, Davis Wright Tremaine LLP, Portland, argued the cause for petitioner on review.  With him on the brief was Timothy R. Volpert.

Janet M. Schroer, Hoffman Hart & Wagner, LLP, Portland, argued the cause for respondent on review.  With her on the brief was Marjorie A. Speirs.

DE MUNIZ, C. J.

The decision of the Court of Appeals and the judgment of the circuit court are reversed.  The case is remanded to the circuit court for further proceedings.

*Appeal from Malheur County Circuit Court, Patricia Sullivan, Judge. 237 Or App 212, 238 P3d 1034 (2010).

1

DE MUNIZ, C. J.

This is a legal malpractice action brought by plaintiff, a convicted felon, against lawyers who undertook to represent him in his attempt to obtain post-conviction relief, and then, shortly before the matter was scheduled for trial, withdrew. Defendant lawyers moved to dismiss the malpractice action for lack of subject matter jurisdiction and failure to state a claim, ORCP 21 A(8). They argued that, under this court's decision in *Stevens v. Bispham*, 316 Or 221, 851 P2d 556 (1993), the malpractice action was barred because plaintiff had not been exonerated of the underlying offenses. The circuit court agreed with defendants, granted their motion, and dismissed the complaint. On appeal, the Court of Appeals affirmed without opinion. For the reasons set out below, we conclude that *Stevens*, a case addressing the statute of limitations in a malpractice action brought by a former criminal defendant against *trial* counsel in the underlying case, does not preclude this convicted plaintiff from pursuing a malpractice action against post-conviction counsel. Because the circuit court treated actual exoneration as a prerequisite for bringing the action, we reverse and remand to that court for further proceedings.

We set out the facts as they were pleaded in the complaint, supplemented by certain undisputed parts of the record that we believe will advance the reader's understanding of the case. In 1999, in two separate cases (one in Crook County and one in Deschutes County), plaintiff was charged with a number of sex crimes. Plaintiff entered into a plea agreement that encompassed both cases and, pursuant to that agreement, pleaded guilty to two of the Crook County felony charges and a single Deschutes County felony charge. Plaintiff was sentenced to lengthy terms of

1

imprisonment. Judgment was entered in the two cases in February and April 2000. Plaintiff did not appeal to the Court of Appeals.

In 2002, plaintiff filed a petition for post-conviction relief in each case. Both post-conviction cases were filed in Malheur County, where plaintiff was incarcerated, and the post-conviction court treated the cases as if they were consolidated. Plaintiff initially was represented by appointed counsel, but, after several consecutively appointed lawyers withdrew from the cases, plaintiff decided to proceed *pro se*. He continued to represent himself for the next three years, during which time the circuit court first dismissed, and then later reinstated, plaintiff's post-conviction petitions.

In May 2006, plaintiff's former trial lawyer contacted defendants about representing plaintiff in his post-conviction cases. Defendants Mallon and Lamborn thereafter met with plaintiff, and plaintiff ultimately signed an agreement retaining their law firm (defendant Mallon Lamborn and Raschio, PC) and deposited $5,000 into defendants' accounts in partial payment of defendants' fees and other expenses.[1] At the time the written retainer agreement was signed, defendants made certain oral promises to plaintiff, including promises: (1) to use a named private investigator, who would "be paid by defendants by and through application for state funding"; (2) to depose witnesses that the investigator had and would identify, and to otherwise work with the investigator to develop evidence; (3) to "conduct an adequate investigation of [a named police

---

[1] The funds apparently were provided by plaintiff's father.

2

detective's] credibility"; (4) to "take the necessary steps" to hire a named audio analyst to analyze plaintiff's recorded confession to the underlying crimes, with that audio analyst being paid "by defendants by and through application for state funding"; (5) to seek withdrawal of plaintiff's guilty pleas and to have property and money in the hands of plaintiff's criminal trial lawyer diverted back to plaintiff; and (6) to "take the necessary steps" to hire a psychologist to test plaintiff for certain mental disorders for purposes of setting aside plaintiff's guilty pleas.

After the retainer agreement was signed, defendants had little contact with plaintiff. Meanwhile, plaintiff wrote lengthy letters to defendants at regular intervals, instructing them to take certain actions and expressing concern about the apparent lack of activity in the cases.

In October 2006, the Malheur County Circuit Court issued an order in plaintiff's post-conviction cases, setting a November deadline for filing all motions and a trial date in early February 2007, "with no further continuance to be granted." A week after the order issued, defendant Lamborn spoke to plaintiff on the phone. Plaintiff expressed his concerns about the looming deadlines and the lack of activity in the cases. Lamborn told plaintiff that he felt unqualified to represent plaintiff in the matter, that he should have a more qualified attorney, and that he would assist plaintiff in finding someone. He assured plaintiff that he would ask the court for a hearing to reset the final filing date for motions.

Weeks went by and Lamborn did not communicate with plaintiff about replacement counsel or the request to reset the final filing date for motions. Plaintiff

wrote a number of letters to defendants Lamborn and Mallon, insisting that they take "necessary and appropriate steps to protect his legal interests." Defendants did not respond to those letters. Plaintiff then filed a motion in circuit court seeking to compel defendants to conduct certain discovery that plaintiff believed was essential. The circuit court held a hearing on the motion in late December 2006, at which time defendant Lamborn told the court that he and plaintiff had a disagreement about how the case should be handled. Lamborn told the court that he had talked to plaintiff about withdrawing from the case and that he did not think that he could represent plaintiff. The circuit court ultimately denied plaintiff's motion to compel and told Lamborn that, if he wanted to withdraw, he would have to file a motion.

On January 10, 2007, Lamborn filed a motion to be relieved as counsel. The motion stated that plaintiff did not object to Lamborn's withdrawal. On January 16, 2007, the circuit court granted Lamborn's motion to withdraw as counsel for plaintiff, three weeks before the post-conviction petitions were scheduled for trial.

Plaintiff's factual allegations in his complaint do not describe the end result of the foregoing events. However, we can determine from the record, and from statements embedded in plaintiff's claims, that, a few days before the scheduled post-conviction trial, plaintiff was confronted with the choice of dismissing his post-conviction petitions with prejudice or going forward with the trial, unprepared and without representation. Plaintiff chose to dismiss the petitions.

Plaintiff thereafter filed the present action on his own behalf, alleging claims for legal malpractice and breach of contract. Putting the very best face on the

4

legal malpractice claims, we understand plaintiff to allege that (1) defendants had a *duty* to represent plaintiff in his post-conviction bid to have his guilty pleas set aside, with the level of skill and diligence that lawyers are expected to use on behalf of their clients in such circumstances; (2) that defendants *breached* that duty in various ways, including by declining to work with the investigator and audio technician that plaintiff had designated, failing to obtain discovery regarding a police witness's credibility, failing to apply for state funding to pay for investigation and experts that were necessary, failing to use available exculpatory evidence to obtain post-conviction relief, failing to return the unused portion of plaintiff's retainer at a "meaningful time," giving the circuit court a false understanding that plaintiff was unable or unwilling to work with lawyers, and withdrawing from plaintiff's case a few weeks before it was scheduled to be tried; (3) that plaintiff suffered certain *harms*; and (4) that defendants' breach of their duties to plaintiff *caused* those harms. The harms or damages that plaintiff identified included: plaintiff's inability to obtain and present the evidence needed to obtain post-conviction relief; plaintiff's loss of the trial court's confidence and the incursion of the trial court's ill-will, which ultimately caused the trial court to deny plaintiff's request for a continuance; plaintiff's resulting lack of preparation for his post-conviction trial; the resulting dismissal of plaintiff's petitions for post-conviction relief with prejudice; plaintiff's resulting inability to have his guilty pleas set aside; the resulting continuation of plaintiff's incarceration and all of the disabilities associated with incarceration (loss of earnings and employment benefits, loss of liberty, loss of family relations, loss of the ability to recover real property that had been turned over to plaintiff's trial counsel in exchange for his

representation, danger of physical attacks and cruelty by Department of Corrections staff and other prison inmates); plaintiff's lack of access to the unused portion of the retainer he paid to defendants to hire replacement counsel and pay other expenses; and plaintiff's incursion of debt to pay for lawyers and investigative and audio analysis services that ultimately went to waste.

As noted, defendants filed a motion to dismiss plaintiff's complaint on the ground that it did not state a claim for which relief may be granted. ORCP 21 A(8).[2] Defendants relied on the rule from *Stevens* that a person must be exonerated from his conviction before he may assert a legal malpractice action against an attorney who represented him in the criminal case that resulted in the conviction. Defendants argued that, because plaintiff had not alleged (and could not allege) that he had been exonerated of the underlying crimes, he had failed to allege an essential element of his legal malpractice claim. At a hearing on the motion, plaintiff argued that the *Stevens* exoneration rule pertains only to malpractice actions filed by convicted defendants against their *trial* attorneys, and does not apply in the post-conviction context.

At the conclusion of the hearing, the trial court told the parties that it was taking the "exoneration" issue under advisement. Plaintiff asked the court about a motion that he had filed a few days before, seeking to amend his complaint. After discussion

---

[2]    Defendants simultaneously and alternatively moved to strike a number of plaintiff's claims and paragraphs on various grounds. The circuit court granted those motions to strike before it took defendants' motion to dismiss under advisement. The court's decisions on the motions to strike are not before this court.

about which motion plaintiff was referring to, the court suggested that, if it decided to deny defendants' ORCP 21 motion, it would allow plaintiff to amend his complaint.[3] In the end, however, the court agreed with defendants that the rule from *Stevens* applied to plaintiff's claim; it dismissed the action and entered a general judgment in defendants' favor. The court explained:

> "The basic principle of *Stevens* is that a cause of action for legal malpractice cannot accrue without 'harm,' and 'harm' as a matter of law can only be shown by exoneration. * * * There is * * * no reason why the principle in *Stevens* should not apply to malpractice claims arising out of post-conviction relief matters.
>
> "It should be noted that there is a distinction between exoneration of the criminal offense and exoneration as the result of the [post-conviction relief proceeding]. The harm from malpractice at the trial court is discovered when the result of those proceedings is somehow reversed. Therefore, the harm from malpractice at the [post-conviction] level would be discovered when plaintiff obtains a favorable modification of the [post-conviction] result. Ordinarily, there would be no difference between these two cases; *i.e.* reversal by a higher court."

> Plaintiff appealed,[4] and the Court of Appeals affirmed without opinion.

---

[3] In fact, the court signed an order that plaintiff drafted granting plaintiff leave to file a second amended complaint (plaintiff already had amended his complaint once) and giving him 30 days to do so. However, the court seemingly rendered that order moot when it granted defendants' motion to dismiss, based on its interpretation of the *Stevens* rule. Nevertheless, in several subsequent filings, which are described below, __ Or at __ (slip op at 8 n 4), plaintiff attached a "second amended complaint" that was never filed, which he had drafted in apparent reliance on the trial court's order.

[4] Plaintiff filed several motions around the time he appealed the dismissal. Plaintiff first filed a motion in the trial court seeking "reconsideration" of the dismissal of his action. He argued that *Stevens* was inapplicable, but also argued that, even if certain of his claims were properly dismissed under *Stevens*, the court should have allowed him to proceed on claims that were denominated in the complaint as "breach of contract" claims. Defendants opposed the motion for reconsideration, arguing that it was

Plaintiff then petitioned the court for review. We allowed the petition to consider whether and how the *Stevens* exoneration rule might apply to a malpractice action against post-conviction counsel.[5]

Our analysis necessarily begins with an examination of *Stevens*. The plaintiff in *Stevens* had been defended by a court-appointed lawyer in a criminal matter

---

inappropriate for the court to take into account, on "reconsideration," a distinction between malpractice and breach of contract claims that plaintiff had failed to articulate *before* the general judgment was entered. The trial court denied the motion, noting that the proper remedy was an appeal.

Plaintiff then filed a motion in the Court of Appeals, requesting that court to grant leave to the circuit court to consider his motion for reconsideration of the judgment. The Court of Appeals denied that motion, noting that there was no statute or rule authorizing such relief.

Finally, plaintiff filed a "Motion for Leave to Allow Plaintiff's Objection to Dismissal * * * to be Filed," which the Court of Appeals treated as a motion to supplement the record, and granted. The supplemental material was an "objection" to the dismissal of plaintiff's complaint, which plaintiff purportedly had given to prison authorities to mail to the trial court, but which never had reached the court. The objection stated that the hearing on the motion to dismiss, which plaintiff had attended via telephone, had been so poorly transmitted that he never understood that there was a danger of his entire complaint being dismissed, and that, in fact, plaintiff's breach of contract claims should not have been dismissed on the grounds that defendants raised in their motion to dismiss.

[5] Plaintiff also suggests, in his petition for review to this court, that the trial court erred in dismissing his complaint in its entirety, based on a rule that is specific to legal malpractice claims, when the complaint also contained a breach of contract claim. Plaintiff appears to acknowledge that he did not raise that issue in the hearing on defendant's motion to dismiss, but he argues that technical difficulties at the hearing prevented him from understanding that the trial court was contemplating dismissing the complaint in its entirety. We have examined the record of that hearing and find no support for his contention. But, in any event, our disposition of the *Stevens* issue in plaintiff's favor makes consideration of plaintiff's alternative argument unnecessary.

8

and, on the lawyer's advice, had pleaded "no contest" to the charges. Later, another man confessed to the crimes, and the trial court immediately vacated the plaintiff's convictions. A year after the convictions were vacated -- but more than two years after the lawyer persuaded the plaintiff to enter the "no contest" pleas -- the plaintiff filed a malpractice action against his court-appointed lawyer. The lawyer moved for summary judgment, raising the two-year statute of limitations that applies in most tort actions, ORS 12.110(1), as an affirmative defense. The trial court granted summary judgment. The plaintiff appealed, and the Court of Appeals reversed. This court affirmed the Court of Appeals, holding that the plaintiff's action did not accrue until he suffered "legally cognizable harm," which occurred when the trial court vacated his convictions. 316 Or at 223-39. The court concluded that, in the context of a criminal case, a malpractice claim cannot be maintained unless the plaintiff already has been exonerated of the underlying crimes through the processes that the legislature has provided:

> "[I]n order for one convicted of a criminal offense to bring an action for professional negligence against that person's criminal defense counsel, the person must, in addition to alleging a duty, its breach, and causation, *allege 'harm' in that the person has been exonerated of the criminal offense through reversal on direct appeal, through post-conviction relief proceedings, or otherwise*."

316 Or at 238 (emphasis supplied).

Given that *Stevens* involved a malpractice action against the lawyer who represented the plaintiff at the trial level, it is not surprising that the foregoing rule is specifically expressed in terms of "action[s] for professional negligence against * * * criminal defense counsel." However, defendants contend (and the circuit court held) that,

9

insofar as the reasons underpinning the exoneration rule are equally relevant to malpractice actions against *post-conviction counsel*, the rule also must apply to such actions. To assess the correctness of that contention, we examine the court's reasoning in *Stevens*.

As noted, the court in *Stevens* was attempting to determine *when and how* a criminal defendant can be said to have suffered "legally cognizable harm" as a result of his trial lawyer's negligence. It concluded that such harm occurs only if and when the criminal defendant has successfully "challenged * * * the conviction through the direct appeal or post-conviction processes * * * provided by Oregon law, or the person otherwise has been exonerated of the offense." 316 Or at 230-31. We understand the court's conclusion to be driven by three considerations.[6]

First, the court pointed to the comprehensive nature of Oregon's substantive and procedural criminal statutes -- a scheme that provides a wide range of protections to persons accused and convicted of criminal offenses, including the right to be represented by competent counsel at all stages of the proceeding and the right to collaterally attack a conviction and sentence on the ground that counsel did not provide competent representation. *Id.* at 229-30. The court posited that any decision it made about what constitutes legal "harm" in the context of a malpractice action against criminal defense

---

[6] We address *Stevens* extensively because the trial court based its ruling on *Stevens* and defendants rely on *Stevens* to sustain that ruling. However, our extensive analysis of *Stevens* in this case should not be read as an endorsement of all the reasoning that underlies the majority's decision in *Stevens*.

counsel must "respect, and not hinder, the valid policy choices already made by the legislature" regarding the obligations of criminal defense counsel and the processes for vindicating those obligations or standards. The court concluded that that principle meant that it would be inappropriate to treat a convicted offender as having been harmed by counsel's negligence in conducting his or her defense unless the offender first showed that counsel had "failed to meet the established standards in a way that would make post-conviction relief appropriate." *Id*. at 230.

Defendants argue that that first line of reasoning -- that the meaning of "harm" in this context must honor the comprehensive scheme of protections that Oregon law provides -- is as relevant to a criminal offender's representation in the post-conviction context as it is to his or her representation at the original criminal trial. As defendants put it, "[t]he fact that alleged malpractice may occur during a post-conviction relief proceeding does not change the fact that the conviction was subject to all of these protections." However, defendants miss the point of the analysis. It is not the fact that the underlying conviction was subject to a comprehensive scheme of procedural and substantive protections that is important. What *is* important, in the *Stevens* analysis, is the fact that the alleged malpractice occurred in the context of a proceeding that was subject to all of those protections -- including a statutory procedure for obtaining relief from an erroneous conviction or sentence caused by counsel's incompetence -- and that it would disregard that legislative policy choice to allow a criminal offender to obtain a judicial determination that he or she was wrongly convicted and obtain money damages by means of a legal malpractice case rather than through the procedures provided by the

11

legislature.

That concern is not present when the malpractice occurs in the context of a post-conviction proceeding. Although the statutory provision for post-conviction relief is one aspect of the overall legislative scheme for ensuring the fairness and accuracy of the criminal convictions and sentences, post-conviction proceedings themselves are civil in nature and they *are not subject to* the scheme of protections that *Stevens* discusses. Given that the panoply of constitutional and statutory protections for protecting criminal defendants (and, particularly, the mechanisms for assuring the effective assistance of counsel), are not operative in post-conviction proceedings, the *Stevens* court's interest in "respecting and not hindering" the policy choice that inheres in the overall scheme of protections simply is not a paramount consideration in defining the elements of claims that arise in that context.

There is another more specific and practical way in which that line of reasoning from *Stevens* fails to translate into the post-conviction context. *Stevens* is premised on the assumption that the legislature's scheme of protections for criminal defendants includes one or more mechanisms for correcting any wrongs suffered by a criminal defendant as a result of his or her attorney's constitutionally or statutorily inadequate representation. In *Stevens*, the required exoneration was available "through direct appeal, through post-conviction relief proceedings, or * * * otherwise." However, there is no express statutory mechanism in Oregon law for obtaining "exoneration" from

12

a denial of post-conviction relief caused by the inadequacy of post-conviction counsel.[7]
In light of the absence of any realistic mechanism for obtaining "exoneration" from the results of post-conviction counsel's inadequacy, extending the exoneration requirement of *Stevens* to malpractice actions against post-conviction counsel would create an insurmountable and arbitrary bar to relief that does not exist with respect to malpractice claims against criminal defense counsel.

Thus, the first line of reasoning underlying the *Stevens* exoneration rule does not appear to apply to the malpractice claim in the present proceeding. In particular, a concern with respecting the legislative policies expressed in the protections that Oregon law extends to criminal defendants does not logically apply to malpractice claims that arise out of civil post-conviction proceedings, where those protections are not in force.

We turn, then, to the second consideration that underlies this court's

---

[7] A convicted offender may, of course, appeal a denial of post-conviction relief, but the inadequate performance of post-conviction counsel cannot be raised in such an appeal. *See Pennsylvania v. Finley*, 481 US 551, 107 S Ct 1990, 95 L Ed 2d 539 (1987) (prisoners do not have constitutional right to counsel when mounting collateral attack on their convictions). Defendants suggest that a convicted offender in these circumstances may also obtain exoneration through federal habeas corpus relief. Although habeas corpus relief may be available when a person's imprisonment is in violation of the prisoner's Sixth Amendment right to effective assistance of counsel, such a proceeding generally would not directly address problems that arise out of counsel's performance at the post-conviction stage, when the offender has no constitutional right to effective assistance. *See id.* Defendants suggest, finally, that there is always a possibility that an offender will be exonerated by some "other" means, as was the plaintiff in *Stevens* (the convictions were vacated when another person confessed to the crimes). But an exoneration *requirement* cannot turn on the mere possibility that a plaintiff might be exonerated of the underlying crime *by some fortuity*.

decision in *Stevens, viz.,* the recognition that, particularly given that the legislature's overall criminal justice scheme makes a criminal conviction difficult to obtain, a finding of guilt should be treated as settled unless and until it is overturned under the procedures that the law provides. In the words of the court, "while the conviction and sentence remain valid for all other purposes, it is inappropriate to treat a complaining convicted offender as having been 'harmed' in a legally cognizable way by that conviction." 316 Or at 232.

Defendants contend that that principle is as valid in the context of a malpractice action against post-conviction counsel as it is in a similar action against trial counsel in the context of a criminal prosecution, and that, "regardless of whether the alleged malpractice occurs at the trial or [post-conviction] level, a malpractice action where the conviction has not been overturned will necessarily entail relitigation of the conviction." However, as plaintiff points out, malpractice actions against post-conviction counsel do *not* necessarily involve relitigation of the underlying conviction. For example, plaintiffs in such actions may seek damages for costs incurred because of the lawyer's negligence in conducting discovery or hiring experts, and such claims would not depend on a finding that the plaintiff's conviction was improper.

That is not to say that defendants' point is without some merit. We acknowledge that a malpractice action in this context may involve a claim that post-conviction counsel's negligence prevented plaintiff from remedying his or her erroneous conviction, a claim that can be proved only by relitigating the merits of the underlying criminal case. However, even if the concern expressed in *Stevens* about relitigating what

14

has been settled has some general relevance to malpractice actions against post-conviction counsel, we think it must carry less weight in that context. The social value of treating a criminal conviction as settled and valid for the purpose of any related civil malpractice proceeding is less compelling when the obvious and sanctioned path for *overturning* the conviction is not available to the convicted person because of counsel's negligence, and when counsel's negligence cannot be redressed under the constitutional and statutory standards that purport to ensure adequate representation in criminal proceedings.

The third and final consideration that drove the *Stevens* decision was the court's desire to preclude convicted offenders from bringing malpractice actions on the ground that counsel failed to get them a "better deal" relating to the terms of the sentence or probation, in a plea agreement, or the like. As the *Stevens* court put it:

> "Such complaints would not result in a reversal of a conviction, either outright or for a new trial. It is only in these latter circumstances, however, that a legal malpractice action will be available. Although a plaintiff may wish that he or she had gotten a better deal, we do not consider it appropriate, outside of circumstances where the kind of relief that we have described is available under the post-conviction relief law, to treat a convicted offender as having been caused 'harm' in a legally cognizable way by any disposition of that person's case that was legally permissible."

*Id.* at 232.

Defendants argue that that consideration is operative in the context of malpractice proceedings against post-conviction counsel because the post-conviction statute appears to allow for post-conviction relief that is "proper and just" (and not necessarily legally required), ORS 138.520, and because post-conviction petitioners

"routinely use this language to support seeking and obtaining better deals."  But, regardless of whether post-conviction petitioners make "better deal" arguments, the plea bargaining concept is not prominent in the post-conviction context and, in any event, we conclude there is no significant danger that post-conviction counsel will be subjected to malpractice actions on the ground that they failed to obtain the best possible deal out of the post-conviction proceeding.  In short, the third consideration that this court raised in *Stevens* has little, if any, application to malpractice actions against post-conviction counsel.

We have concluded that, of the three considerations that drove this court's decision in *Stevens*, only one, the concern about relitigating settled convictions, has any relevance to malpractice actions against post-conviction counsel, and that even that consideration is less compelling in this context.  That single concern is not a sufficient reason to extend *Stevens'*s exoneration requirement, which was designed for malpractice actions against criminal defense counsel, into the sphere of malpractice actions against counsel in civil post-conviction proceedings.  We hold that prior exoneration, by means of appeal, post-conviction proceedings, or otherwise, is not a prerequisite for asserting a malpractice claim against post-conviction counsel.[8]

---

[8]  We recognize that courts in some other jurisdictions have reached the opposite conclusion, and apply the exoneration rule broadly to almost any allegation of malpractice brought by a criminal offender against a lawyer who has represented the offender in connection with his or her convictions.  *See, e.g.*, *Tallmadge v. Boyle*, 300 Wis 2d 510, 730 NW2d 173 (2007)  (malpractice action against attorney hired to secure habeas relief); *Gaylor v. Jeffco*, 160 NH 367, 999 A2d 290 (2010) (malpractice action

16

Defendants argue that, even if the exoneration rule is not applicable, the trial court's dismissal of the complaint should be affirmed because plaintiff did not plead all the necessary elements of a traditional attorney malpractice claim. Defendants observe, in that regard, that, in an ordinary legal malpractice case, the plaintiff must plead and prove that, but for the attorney's negligence, he would have succeeded in the underlying action. Defendants contend that here, that means that plaintiff must plead and prove that, were it not for defendants' alleged negligence, plaintiff would have prevailed in the post-conviction proceeding and, then, would have obtained relief from his convictions either through dismissal of all charges on remand or by acquittal on retrial. Defendants argue that, because plaintiff's complaint contains no allegation that he would have obtained relief from his convictions "but for" defendants' negligence, his complaint properly was dismissed for failure to state a claim.

---

against attorneys who represented convicted offender in post-conviction proceedings). However, the policy reasons that underpin the exoneration rules in *those* jurisdictions are significantly different from the ones discussed by this court in *Stevens.* The courts in those jurisdictions rely on principles that would apply to any legal representation in connection with an offender's convictions: the courts' moral disapproval of, and their perception of public discomfort with, the possibility that a convicted criminal could indirectly derive some benefit for their crimes. In contrast, the principles that drove this court's decision in *Stevens* are, as discussed, more strongly connected to the trial and appeals processes.

Although we conclude that actual prior exoneration is not a *prerequisite* for filing a malpractice action against post-conviction counsel, exoneration is not irrelevant in such an action. As discussed below, in most cases, the probability or certainty that, but for the lawyer's negligence, the plaintiff would have been exonerated, is a matter that the plaintiff must plead and prove.

17

There is both a short answer and a long answer to defendants' contention. The short answer arises out of the fact that, before the trial court issued its decision on defendant's motion to dismiss, it indicated to the parties that, if it rejected defendants' argument about the applicability of *Stevens,* it would allow plaintiff to file an amended complaint. We are not inclined to affirm the trial court's decision on the alternative ground defendants now asserts when the possibility exists that, on remand, plaintiff will be permitted to amend his complaint in a way that cures the asserted problem.[9]

The long answer, which we include in this opinion for the benefit of bench and bar, is that the legal proposition underpinning defendant's argument about the pleadings is not entirely correct. We would agree with defendants that plaintiff must plead causation and that, at bottom, that means alleging that, "but for" defendants' negligence, plaintiff would not have suffered the damages that he alleges. To the extent that plaintiff alleges damages that are associated with his continued incarceration -- damages like loss of freedom, loss of income, and loss of the companionship of family and friends --  he must plead and prove that, if defendants had performed competently in the post-conviction proceeding, plaintiff would have obtained relief in that proceeding, that he would have avoided reconviction in any subsequent proceeding on remand, and

---

[9]  As noted above, plaintiff submitted a document labeled "second amended complaint," which apparently never was formally filed as such, as an attachment to various objections to, and motions for reconsideration of, the trial court's order of dismissal.  The trial court conceivably could treat that document as plaintiff's complaint going forward, or it could permit plaintiff to replead altogether.

that he would have been released from prison.[10] Plaintiff's simple assertion that "defendants' negligence caused plaintiff to remain incarcerated" may be insufficient for that purpose but if it is, the deficiency *could* be cured in an amended complaint (if the trial court, in fact, permits such an amendment).

On the other hand, to the extent that plaintiff alleges damages that do not depend on the certainty of success in obtaining relief from his convictions, pleading and proving that plaintiff would have obtained relief from his convictions would be unnecessary. An example of such an allegation would be one that alleged that plaintiff incurred litigation-related costs that, except for defendants' negligence, he would not have incurred. The complaint that is before this court now appears to contain such an allegation.

There has been some suggestion, in the course of the argument of this case, that plaintiff is simply alleging that defendants' negligence caused him to lose his only *opportunity* to obtain relief from his conviction, and that such a pleading should be legally sufficient. If such a pleading *were* sufficient, then plaintiff would be relieved from the onerous burden of showing that he would have prevailed in the post-conviction

---

[10] The procedure for proving plaintiff's case would be the "case within a case" process, whereby the factfinder in the malpractice case determines what the outcome would have been if the underlying case had been properly tried. *See Chocktoot v. Smith*, 280 Or 567, 570-71, 571 P2d 1255 (1977) (describing that process); *Harding v. Bell*, 265 Or 202, 205, 503 P2d 216 (1973) (same). In fact, because here the underlying case (the post-conviction proceeding) involved its *own* underlying case (the criminal proceeding), the proper procedure would more aptly be described as a "case within a case within a case," something like a Russian nesting doll, known as a "Matrushka."

19

proceeding and, then, in any subsequent proceeding in the underlying criminal case, under the "case within a case" methodology that is typically used to prove legal malpractice in a litigation context. *See Chocktoot v. Smith*, 280 Or 567, 570-71, 571 P2d 1255 (1977) (describing "case within a case" methodology); *Harding v. Bell*, 265 Or 202, 205, 503 P3d 216 (1973) (same).

However, such a pleading is not legally sufficient in Oregon. It is true that some jurisdictions have recognized a claim based on "loss of chance" in the medical malpractice context,[11] and that some commentators have advocated its application in legal malpractice actions, on the theory that the plaintiff's burden of proof under the traditional "case within a case" methodology is too great. *See, e.g.*, Lawrence W. Kessler*, Alternative Liability in Litigation Malpractice Actions: Eradicating the Last Resort of Scoundrels*, 37 San Diego L Rev 401, 482-520 (2000). In our view, the loss of chance doctrine should not be imported into the legal malpractice context. Whatever the merits in the medical malpractice context,[12] where the proof burden facing some

_____

[11] The typical medical malpractice loss-of-chance case involves a doctor's belated diagnosis of disease that only a small percentage of people ordinarily survive, even with early treatment. If the patient dies and the survivors sue the doctor for medical malpractice, the traditional rules pertaining to proof of medical malpractice would require the survivors to prove the impossible, *i.e.*, that, but for the doctor's negligent failure to make a timely diagnosis, the patient would have survived. Applied to a medical malpractice suit in such circumstances, the loss-of-chance doctrine permits the survivors to sue the doctor for causing a *reduced* chance of living. *See* John C.P. Goldberg, *What Clients are Owed: Cautionary Observations on Lawyers and Loss of a Chance*, 52 Emory L J 1201, 1204-05 (2003) (describing typical medical malpractice scenario).

[12] We note that, in *Joshi v. Providence Health System,* 342 Or 152, 149 P3d

plaintiffs otherwise would be insurmountable and where statistical evidence that can fill the void is readily available, the argument for its application in the legal malpractice context is less compelling, where it would simply reduce the plaintiff's burden *vis-à-vis* the traditional "case within a case" methodology. We hold that any allegation in plaintiff's complaint that defendants' negligence caused plaintiff to lose his *chance* for relief from his convictions would be legally insufficient.

We have concluded that the trial court erred in dismissing plaintiff's complaint on the ground that plaintiff had not been exonerated. We have declined to consider defendants' alternative ground for affirming the dismissal because it appears to us that the trial court was willing to allow plaintiff to amend his complaint. We remand the case to the trial court where, on defendant's motion, the court may consider whether any or all of plaintiff's pleadings in the present complaint, or any amended complaint that the trial court decides to accept, are sufficient, using the principles relating to causation and damages discussed above.

The decision of the Court of Appeals and the judgment of the circuit court are reversed. The case is remanded to the circuit court for further proceedings.

---

1164 (2006), this court rejected what amounted to a "loss-of-chance" theory of proving causation in a statutory wrongful death action alleging that a physician's failure to diagnose a patient's stroke led to the patient's death.