Argued and submitted January 11, affirmed December 29, 2011, petition for review denied July 19, 2012 (352 Or 266)

Perry WATSON, III,
and Brookdale Group, Inc.,
fka Brookdale Dodge, Inc.,
*Plaintiffs-Appellants,*

*v.*

E. Kelly MELTZER,
Lawrence Evans
and Grenley, Rotenberg, Evans, Bragg & Bodie, P. C.,
*Defendants-Respondents.*

Multnomah County Circuit Court
070303137; A139449

270 P3d 289

Thomas W. Sondag argued the cause for appellants. With him on the briefs were Lane Powell PC, and John Folawn and Folawn Alterman & Richardson LLP.

Christopher T. Carson argued the cause for respondents. On the brief were Stephen C. Voorhees, Graham M. Sweitzer, and Kilmer, Voorhees & Laurick, P.C.

Before Haselton, Presiding Judge, and Duncan, Judge, and Landau, Judge pro tempore.*

_____

* Landau, J. pro tempore, *vice* Armstrong, J.

LANDAU, J. pro tempore.

## LANDAU, J. pro tempore

This is a legal malpractice case in which plaintiff contends that defendants were negligent in providing advice to plaintiffs during negotiations for the sale of a business. The jury found that one of defendants was negligent, but that his negligence did not cause plaintiffs any damage. On appeal, the issue is whether the trial court erred in instructing the jury on the subject of causation. Specifically, plaintiffs contend that the trial court erred in delivering Uniform Civil Jury Instruction 45.02—commonly known as the "case-within-a-case" instruction—which requires the jury to determine whether a defendant's negligence caused a "less favorable outcome" for a plaintiff. According to plaintiffs, although the instruction may be appropriate in cases involving legal malpractice during the course of litigation, it is not appropriate when the malpractice occurs during the negotiation of a transaction. Defendants respond that the Oregon courts have never recognized the distinction between litigation and transaction malpractice for which plaintiffs contend, and this court should not do so in this case. Defendants contend that the case-within-a-case instruction states nothing more than the unremarkable principle that, in order to find liability for negligence, a defendant's conduct must have actually caused the plaintiff an ascertainable loss. We agree with defendants and affirm.

We set out the facts relevant to the issue of causation in the light most favorable to the prevailing party, defendants. *Holmes v. Morgan*, 135 Or App 617, 619, 899 P2d 738, *rev den*, 322 Or 193 (1995). Plaintiff Watson owned Brookdale Dodge (Brookdale), an automobile dealership. In 2003, Watson decided to sell Brookdale because the dealership was having serious financial troubles. Watson contacted David Luther, the owner of several other dealerships in the area, to see if he would be interested in purchasing Brookdale. Luther responded that he was interested because purchasing Brookdale would enable him to consolidate it with his Jeep-Chrysler dealership to create an "alpha" dealership that sold all makes of vehicles produced by the three different manufacturers owned by DaimlerChrysler.

After negotiating the basic terms of the deal, Watson contacted defendant Larry Evans, an attorney at the law firm of defendant Grenley, Rotenberg, Evans, Bragg & Bodie, P.C., to handle the legal paperwork necessary to complete the transaction. Evans agreed, but another lawyer at the firm, Kelly Meltzer, eventually took over responsibility for the case.

Luther's attorney, Dick Hackett, drafted an asset purchase agreement to effectuate the sale of Brookdale's assets. The draft agreement was emailed to Meltzer. One section of the agreement addressed the subject of "withdrawal liability," which referred to, in essence, any liability to an employee benefit plan that may exist at the time of the sale. Section 4.1(g)(F) of that agreement provided that "[s]eller has no withdrawal liability under any of the Plans." Later, the parties modified that section to state that "[s]eller has no withdrawal liability under any of the Plans that will not be satisfied by [s]eller." The problem was that, in fact, there existed substantial withdrawal liability—over $1.9 million—that Meltzer had failed to discover and Watson did not know about before the execution of the asset purchase agreement.

Once Watson realized the extent of his liability, he approached Luther about altering the transaction before closing the sale in order to lessen his withdrawal liability. Luther declined, explaining that it was too late in the closing process to renegotiate or to alter the original agreement. The parties closed the sale. Thereafter, pursuant to the withdrawal liability provision of the sale agreement, Watson began making installment payments, plus interest, on the withdrawal liability. Once Watson completes the installment payments, he will have paid over $2.9 million.

Watson and Brookdale sued Evans, Meltzer, and the law firm for legal malpractice, alleging that defendants were negligent in failing to discover the nature and extent of the withdrawal liability until after Watson signed the asset purchase agreement. Defendants argued that, among other things, plaintiffs could not prove that any negligence that they had committed caused plaintiffs' harm. In particular, defendants argued that plaintiffs could not prove that, if they

had discovered the nature and extent of the withdrawal liability, it would have made any difference in the outcome of the deal. In response, plaintiffs attempted to elicit from Luther whether he would have been amenable to restructuring the deal, but Luther demurred that he could not say.

In arguments to the trial court, the parties debated precisely what evidence would suffice to establish the element of causation required in legal malpractice cases. Plaintiffs asserted that they could prove causation by presenting evidence that defendants advised Watson to sign the asset purchase agreement before determining the withdrawal liability, which directly resulted in Watson incurring the withdrawal liability. Plaintiffs argued that, if defendants had notified them earlier of the withdrawal liability, they would have had *the opportunity* to negotiate with Luther regarding methods of restructuring the transaction to avoid or mitigate that liability. Put simply, if Watson had not signed the agreement, he would not owe the withdrawal liability. It was of no import, plaintiffs concluded, that they could not prove that they would have achieved a "better result"—*i.e.*, that Luther would have agreed to restructure the deal—because, in a case regarding transactional legal malpractice, "what would have happened is speculation *because it didn't happen.*" (Emphasis in original.)

Defendants responded that, under settled principles of negligence and legal malpractice liability law, plaintiffs were required to show that " 'but for' defendants' alleged negligence, [plaintiffs] would have had a better financial outcome in the business sale transaction." Based on that formulation of causation, defendants requested that the trial court give Uniform Civil Jury Instruction 45.02, which provides:

> "If you find that the defendant[s] w[ere] negligent as claimed by the plaintiff[s], then you must decide whether that negligence caused any loss to the plaintiff[s].

> "To determine whether the defendant[s'] alleged negligence in fact resulted in a less favorable outcome for the plaintiff[s], you must first determine what the outcome for the plaintiff[s] would have been had the defendant[s] not been negligent. If the outcome that would have occurred is no more favorable than the outcome that did occur, then the

plaintiff[s'] loss or damage cannot have been caused by the defendant[s]."

Plaintiffs objected to the use of that causation instruction, arguing that it was an incorrect statement of the law because the "case-within-a-case" formulation of causation applied only in litigation malpractice cases, as opposed to this case, which involved transactional legal malpractice. Plaintiffs argued that the instruction would be confusing to the jury because it implies that "plaintiffs must be able to show [what] their precise outcome would have been had defendants not been negligent." Plaintiffs noted that "defendants' negligence is precisely what cutoff such option[.]" According to plaintiffs, the inquiry into what kind of outcome would have occurred had defendants not been negligent was more appropriately considered when determining damages.

Ultimately, the trial court gave the contested instruction to the jury. Plaintiffs took exception to the instruction. The jury determined that Evans and the firm were not negligent but that Meltzer was. Still, the jury concluded that plaintiffs were not entitled to recover damages because Meltzer did not cause plaintiffs' damages.

Plaintiffs appeal, assigning error to the trial court's decision to give the "case-within-a-case" jury instruction. Plaintiffs reprise their argument that the instruction "places an unfair and unwarranted burden on the plaintiff in a transactional malpractice case." Defendants respond, first, by contending that plaintiffs' arguments at trial were too general to satisfy the requirements of preservation of error set out in ORCP 59 H and, second, by reprising their own argument on the merits that the instruction that the trial court gave was entirely consistent with settled principles of Oregon law.

We begin, briefly, with the issue of preservation. ORCP 59 H provides:

"H(1)    * * * A party may not obtain review on appeal of an asserted error by a trial court in submitting or refusing to submit a statement of issues to a jury pursuant to subsection C(2) of this rule or in giving or refusing to give an instruction to a jury unless the party who seeks to appeal identified the asserted error to the trial court and made a

notation of exception immediately after the court instructed the jury.

"H(2)   * * * A party shall state with particularity any point of exception to the trial judge. A party shall make a notation of exception either orally on the record or in a writing filed with the court."

To comply with that rule, a party must clearly articulate an objection to the jury instruction in order to give "the court the opportunity to change the instruction" and must also take exception to the instruction after it is given to the jury. *Jett v. Ford Motor Co.*, 335 Or 493, 502-03, 72 P3d 71 (2003).

In this case, plaintiffs filed objections to the instruction, explaining with particularity why they believed the instruction was improper. Plaintiffs clearly articulated the arguments that they make before this court—that the uniform instruction should not be given in transactional malpractice cases because the underlying case-within-a-case rationale does not apply to such cases and because it is inconsistent with existing case law. To be sure, plaintiffs may not have identified at trial each and every case that they have cited to this court on appeal. We are aware of no case that holds that the particularity requirement of ORCP 59 H goes quite that far.

We turn, then, to the merits of the appeal. We review jury instructions for errors of law and will reverse only if we can fairly say that, when considering all of the instructions as a whole, the instruction at issue probably created an erroneous impression of the law in the minds of the jurors that affected the outcome of the case. *Maas v. Willer*, 203 Or App 124, 129, 125 P3d 87 (2005), *rev den*, 340 Or 411 (2006). At issue in this case is the propriety of delivering Uniform Civil Jury Instruction 45.02, which requires a jury to determine "whether the defendant[s'] alleged negligence, in fact, resulted in a less favorable outcome for the plaintiff[s]," which, in turn, necessitates a determination of "what the outcome for the plaintiff[s] would have been had the defendant[s] not been negligent." Specifically, the issue is whether the instruction accurately states the requirements for determining causation in a legal malpractice case in which the

malpractice occurred in the course of a transaction, as opposed to litigation.

An action for legal malpractice is not materially different from an ordinary negligence action. *Harding v. Bell*, 265 Or 202, 204, 508 P2d 216 (1973) ("An action for negligence by an attorney is not fundamentally different from other more typical actions for negligence."). It is simply a variety of negligence in which a special relationship gives rise to a particular duty that goes beyond the ordinary duty to avoid a foreseeable risk of harm; accordingly, in order to prevail in a legal malpractice action, a plaintiff must allege and prove "(1) a *duty* that runs from the defendant to the plaintiff; (2) a *breach* of that duty; (3) a resulting *harm* to the plaintiff measurable in damages; and (4) *causation, i.e.*, a causal link between the breach of duty and the harm." *Stevens v. Bispham*, 316 Or 221, 227-28, 850 P2d 359 (1993) (emphasis in original).

Under Oregon negligence law, the element of "causation" ordinarily refers to "causation-in-fact" or "but-for" causation. *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 340, 83 P3d 322 (2004). That is to say, in order to prevail in a negligence action, a plaintiff must establish that *but for* the negligence of the defendant, the plaintiff would not have suffered the harm that is the subject of the claim. *See Joshi v. Providence Health System*, 198 Or App 535, 538-39, 108 P3d 1195 (2005), *aff'd*, 342 Or 152, 149 P3d 1164 (2006) (" 'Cause-in-fact' also has a well-defined legal meaning: it generally requires evidence of a reasonable probability that, *but for the defendant's negligence, the plaintiff would not have been harmed*." (Emphasis added.)).

In the legal malpractice context, that means that, to prevail, a plaintiff must show, " 'not only that the attorney was negligent, but also that the result would have been different except for the negligence.' " *Harding*, 265 Or at 205 (quoting John H. Wade, *The Attorney's Liability for Negligence in Professional Negligence* 231-32 (Thomas G. Roady & William R. Anderson eds. 1960)); *see also Jeffries v. Mills*, 165 Or App 103, 122, 995 P2d 1180 (2000) ("To show

causation in a legal malpractice action, a plaintiff must demonstrate that she would have obtained a more favorable result" but for the negligence of the defendant).

In the more specific context of legal malpractice that occurred during the course of litigation, the general requirement that a plaintiff demonstrate that he or she would have obtained a more favorable result but for the negligence of the defendant has been referred to as a requirement of proving a "case within a case." *See, e.g., Drollinger v. Mallon*, 350 Or 652, 668, 260 P3d 482 (2011) (referring to "the 'case within a case' methodology that is typically used to prove legal malpractice in a litigation context"). It may well be that the shorthand expression of "case within a case" makes sense only in the litigation context, where it may be said that the malpractice occurred in an actual "case." But the underlying requirement—that a plaintiff demonstrate that, but for the malpractice of the defendant, he or she would have obtained a more favorable result—is not a special rule that applies only in litigation malpractice cases. It is simply the application of the but-for causation requirement that applies in ordinary negligence cases.

With the foregoing in mind, we turn to plaintiffs' specific arguments in this appeal. Plaintiffs first argue that the instruction given in this case erroneously required the jury to determine what "*would* have been" the outcome but for defendants' negligence, when what the Supreme Court required in *Chocktoot v. Smith*, 280 Or 567, 571 P2d 1255 (1977), is a determination of what "*should* have been" the outcome. The argument, however, cannot be supported by a fair reading of the *Chocktoot* decision; in fact, it is contradicted by that case.

At issue in *Chocktoot* was whether a judge, as opposed to a jury, must decide whether an attorney's negligence caused the harm of which a plaintiff complains. *Id.* at 569. The answer, the court held, depends on the nature of the case. Beginning by stating general principles, the court stated that,

"[w]hen an attorney's negligence occurred in the conduct of litigation, a jury cannot award damages for plaintiff's loss

unless it concludes that the negligence led to an unfavorable or less favorable outcome for plaintiff. The jury in the malpractice case is called upon, in effect to decide what the outcome for plaintiff *would have been* in the earlier case if it had been properly tried[.]"

*Id.* at 570 (emphasis added). In the ordinary case, the court observed, that means that the outcome of the earlier case is simply submitted to the jury to determine "the probable behavior" of a jury deciding the earlier case but for the negligence of the defendant. *Id.* at 571. But, the court noted, if the outcome of the earlier case hinged on an issue of law, a different procedure is required. *Id.* at 572-73. The reviewing court, rather than a jury, must determine the outcome of the earlier case but for the defendant attorney's negligence. *Id.* at 573. And, because the underlying issue is one of law, the determinative issue is what *should* have been the result of the earlier case. As the court in *Chocktoot* explained, "with respect to an issue of law in the earlier case, the issue in the malpractice case is what the outcome *should* have been if the issue had been properly presented[.]" *Id.* (emphasis in original).

Thus, plaintiffs' contention that a jury must be instructed to determine what "should have been" the outcome but for defendants' negligence is incorrect. The court plainly stated that, where the outcome of the underlying case depends on the resolution of factual issues, the jury must determine "what the outcome for plaintiff *would have been* in the earlier case if it had been properly tried[.]" *Id.* at 570 (emphasis added). Only when the outcome of the underlying case depends on the resolution of a legal issue, the court held, is the appropriate focus of the reviewing judge "what the outcome *should* have been if the issue had been properly presented[.]" *Id.* at 573 (emphasis in original).

Second, plaintiffs argue that, in any event, it is "unfair" to require a plaintiff in a transaction case to establish the sort of causation that may be required in other contexts because of the peculiar nature of transactional legal work. According to plaintiffs, the but-for requirement in transactional malpractice cases should be limited to proving the *amount of damages*, not to causation.

Plaintiffs' argument presupposes that this court is free to fashion a special causation requirement that relieves plaintiffs in transactional legal malpractice cases from proving elements of an ordinary negligence case. As we have noted, although the label "case within a case" may apply only to litigation cases, the underlying requirement in all negligence cases—not just legal malpractice cases—remains that a plaintiff must prove that, but for the defendant's negligence, the plaintiff would not have suffered the harm that has been alleged. Plaintiffs' proposal simply cannot be reconciled with existing Oregon negligence law.

Aside from that, plaintiffs' argument further assumes that there is a meaningful *a priori* distinction between malpractice that occurs during the course of transactions, as opposed to litigation. The distinction is not obvious to us. It is not clear, for example, whether malpractice committed during the course of settling a lawsuit in the middle of trial would be appropriately classified as malpractice of a "litigation" or "transactional" variety.

Plaintiffs insist that transactional legal malpractice is qualitatively different because requiring proof of what would have been the outcome of a negotiation but for a defendant's negligence necessitates proof of something that never happened. The same, however, may be said of any litigation legal malpractice case. The very nature of the requirement of causation requires a comparison of what actually happened with what, hypothetically, would have happened but for the defendant's conduct.

Plaintiffs also insist that transactional cases are different because, but for a defendant's negligence, any number of possible outcomes could have occurred. Again, however, the same could be said of many litigation legal malpractice cases, depending on the level of generality with which the "outcome" is described.

Third, plaintiffs argue that it is inappropriate to require them to prove that the outcome would have been different but for defendants' negligence because it was defendants' negligence that precluded proof of that very fact. Specifically, plaintiffs complain that, because of defendants' negligence in failing to ascertain the extent of the withdrawal

liability, they were denied the opportunity to negotiate with Luther regarding ways of restructuring the transaction to avoid or mitigate liability. When plaintiffs questioned Luther about what might have been the product of such negotiations, however, Luther testified that he did not know what the likely outcome of such negotiations would have been. Plaintiffs argue that the fact that Luther could not say what the outcome would have been was directly traceable to defendants' negligence. But for defendant's negligence, they contend, Luther would have been in a position to provide the necessary information.

Plaintiffs' argument, however, pertains to the inadequacy of their proof, not to any defect in the instruction. The fact that, in this particular case, plaintiffs found it difficult to obtain evidence of what the outcome of the transaction would have been in the absence of defendants' negligence does not mean that such difficulties will occur in all transactional legal malpractice cases. An express concession by another party to a transaction is not the only way to prove causation in a transactional legal malpractice case. And the fact that plaintiffs in this case could not elicit such a concession from their witness does not mean that the trial court's instruction on the issue of causation was legally erroneous.

We conclude that plaintiffs have failed to meet their burden of demonstrating that Uniform Civil Jury Instruction Number 45.02 was legally erroneous.

Affirmed.