Argued and submitted May 2, 2014, affirmed February 19, 2015

Ronald LENN
and Kathleen Lenn,
*Plaintiffs-Appellants,*

*v.*

Steven C. BALDWIN,
*Defendant-Respondent.*

Lane County Circuit Court
161014585; A149072

344 P3d 475

Marianne Dugan argued the cause and filed the briefs for appellants.

Robert A. Ford argued the cause for respondent. With him on the brief was Kurtz, Ford & Johnson LLP.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

SERCOMBE, P. J.

**SERCOMBE, P. J.**

Following a trial in this legal malpractice case, the jury returned a verdict in favor of defendant and against plaintiffs. Plaintiffs appeal the resulting general judgment in favor of defendant, raising six assignments of error. We write only to address plaintiffs' fifth assignment of error, and reject without discussion the remaining assignments of error. In their fifth assignment, plaintiffs assert that the trial court erred in giving the jury a special instruction requested by defendant stating that "an attorney is not liable for alleged negligence in how he handled a client's case at trial if the clients had no valid claim to relief to begin with, because the attorney's conduct could not be a cause of any injury or damage to the clients." We affirm the judgment of the trial court.

The background facts are undisputed. In November 2004, plaintiffs retained defendant to represent them in a real property dispute with their neighbors, the Bottems. Defendant filed a circuit court action against the Bottems on plaintiffs' behalf, alleging adverse possession, boundary by agreement, and trespass. That case eventually went to trial, and the trial court concluded that plaintiffs were or should have been aware of the true location of their property line near the time they purchased their property. Accordingly, the court entered judgment in favor of the Bottems and, later, awarded the Bottems costs, attorney fees, and an enhanced prevailing party fee.[1] Plaintiffs, represented by different counsel, unsuccessfully appealed the trial court's award of attorney fees and the enhanced prevailing party fee. *See Lenn v. Bottem*, 221 Or App 241, 190 P3d 399, *rev den*, 345 Or 503 (2008).

In 2010, plaintiffs brought this legal malpractice case against defendant. With respect to the case against the Bottems, plaintiffs alleged that the "claims presented in that lawsuit were well-founded both in law and fact." However, the "trial court ruled against [them] and ordered them to pay the Bottems' attorney fees and an enhanced prevailing

---

[1] The court awarded the Bottems attorney fees and an enhanced prevailing party fee pursuant to ORS 20.105(1), based on a conclusion that plaintiffs' claims were without an objectively reasonable basis.

party fee, largely or entirely due to credibility findings made by the trial court."

They also alleged that, at the time they retained defendant to represent them, they had potential claims for misrepresentation or fraud relating to the property line against the realtor and seller from whom they purchased their property. However, they asserted that, after the trial on their claims against the Bottems, their potential claims against the seller and realtor were barred by issue preclusion because, at that trial, the court

"made a binding factual finding that the plaintiffs knew or should have known about the true location of their deed line in 1995, so that the applicable limitations periods against the seller and realtor would be deemed to have started running no later than 1995, barring all of plaintiffs' available claims against the seller and realtor."

According to plaintiffs, defendant was negligent in a number of ways: (1) failing to advise them of the risk of issue preclusion on their potential claims against the seller or realtor; (2) failing to research the issue preclusion and statute of limitations issues regarding the realtor/seller claims in time to properly act on those issues before the Bottems trial; (3) failing to pursue settlement negotiations; (4) failing to properly advise them of the risks of going to trial on their adverse possession claim; (5) failing to properly advise them of the benefits of pursuing settlement with the Bottems and the realtor and seller; (6) failing to "take steps to discover and recognize difficult evidentiary issues regarding when [plaintiffs] knew or should have known of the correct boundary line"; and (7) failing to timely and adequately respond to the Bottems' motion for attorney fees and an enhanced prevailing party fee. As damages, plaintiffs sought to recover the amount they paid to defendant for fees and costs, the judgment for the Bottems' costs, fees, and enhanced prevailing party fee, and the amounts they paid their appellate attorneys to appeal the attorney fee and enhanced prevailing party fee award.

Defendant denied that he was negligent and also alleged that plaintiffs were at fault and caused their own damage in a number of ways: (1) not being truthful with

him about when they learned of the true location of the boundary line of their property; (2) failing to inform him of critical facts concerning their adverse possession, boundary by agreement, and trespass claims against the Bottems; (3) failing to provide him with critical documents concerning their claims against the Bottems; (4) failing to heed his warnings about the possible consequences of proceeding to trial against the Bottems; (5) failing to testify truthfully about when they learned of the true location of the boundary line to their property; and (6) filing a meritless appeal and petition for review of the trial court's attorney fee and enhanced prevailing party fee award.

Before trial, the parties each submitted proposed jury instructions to the court. Defendant requested a special jury instruction that "an attorney is not liable for alleged negligence in handling a client's case if the clients had no valid claim for relief to begin with, because the attorney's conduct could not be the cause of any injury or damage to the clients." Plaintiffs responded that the instruction "makes no sense in the context of this case" for two reasons. First, "if an attorney takes [money] from a client to pursue a case where there is 'no valid claim for relief,' that in itself is negligence causing significant damages which the plaintiffs should be allowed to recover." Second, the Bottems' attorney testified "that his clients would have settled for a conservation easement" and "plaintiffs testified that they would have accepted such a settlement"; therefore, "[c]learly, there was some 'valid claim for relief,' because * * * the opposing party was willing to settle." The trial court ultimately gave the jury a modified version of the instruction: "[A]n attorney is not liable for alleged negligence in *how he handled a client's case at trial* if the clients had no valid claim for relief to begin with, because the attorney's conduct could not be a cause of injury or damage to the clients." (Emphasis added.) After the jury was instructed, plaintiffs noted their exception to the instruction. However, they did not make additional arguments to the court regarding the instruction, as given.

On a special verdict form, the jury found that defendant was "at fault in one or more of the ways the plaintiffs claim[ed]" and that defendant's fault was a cause of

damages to plaintiffs. In addition, the jury found that plaintiffs were "at fault in one or more of the ways the defendant claim[ed]" and plaintiffs' fault was a cause of their damages. The jury was asked to apportion the "percentage of each of the part[y's] fault that caused damage to the plaintiffs" and concluded that defendant's percentage of fault was 25 percent, while plaintiffs' fault was 75 percent. Because plaintiffs' percentage of fault was greater than 50 percent, the verdict was for the defendant. Accordingly, the trial court entered a general judgment in defendant's favor.

As noted, on appeal, plaintiffs assert that the trial court erred in instructing the jury that "an attorney is not liable for alleged negligence in how he handled a client's case at trial if the clients had no valid claim for relief to begin with, because the attorney's conduct could not be a cause of any injury or damage to the clients." "We review jury instructions for errors of law and will reverse only if we can fairly say that, when considering all of the instructions as a whole, the instruction at issue probably created an erroneous impression of the law in the minds of the jurors that affected the outcome of the case." *Watson v. Meltzer*, 247 Or App 558, 564, 270 P3d 289 (2011), *rev den*, 352 Or 266 (2012).

In their opening brief, plaintiffs reiterate the arguments they made to the trial court. In particular, they assert that the instruction "makes no sense in the context of this case" for two reasons. Those are (1) that, "if an attorney takes [a large sum of money] from a client to pursue a case where there is 'no valid claim for relief,' a jury would be entitled to find that that in itself is negligence causing significant damages which the plaintiffs should be entitled to recover" and (2) that, according to the testimony, the Bottems and plaintiffs could have settled the underlying case instead of spending money on attorney fees, and "[c]learly there was some 'valid claim for relief,' because * * * in the underlying case, the opposing party was willing to settle."

We first observe that the challenges laid out in plaintiffs' opening brief do not directly address the instruction that was given by the court. The instruction related specifically to an attorney's liability for how he "handled a

client's case *at trial*." (Emphasis added.) Plaintiffs, in their brief, do not explain why *that* instruction was incorrect, but instead seem to contend that an attorney could commit malpractice in other ways—by taking money to pursue a bad case or by failing to settle a case. However, the instruction given did not instruct the jury that an attorney could not be liable for poor pretrial handling of a case if the case was no good to begin with. It only addressed an attorney's liability in the handling of a case at trial. To the extent that plaintiffs are of the view that the trial court should have given the jury more detailed instructions relating to an attorney's potential liability for pretrial conduct, they did not request such instructions. *See* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court * * *."); ORCP 59 H ("A party may not obtain appellate review of an asserted error by a trial court * * * in giving or refusing to give an instruction to the jury unless the party seeking review identified the asserted error to the trial court * * *."); *see also State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) ("[A] party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted.").

In any event, the jury instruction, as given, was a correct statement of law and, considered in the context of the instructions as a whole, was not likely to have created an erroneous impression of the law in the minds of the jurors that affected the outcome of the case. As we have explained, an "action for legal malpractice is not materially different from an ordinary negligence action." *Watson*, 247 Or App at 565.

> "It is simply a variety of negligence in which a special relationship gives rise to a particular duty that goes beyond the ordinary duty to avoid a foreseeable risk of harm; accordingly, in order to prevail in a legal malpractice action, a plaintiff must allege and prove (1) a *duty* that runs from the defendant to the plaintiff; (2) a *breach* of that duty; (3) a resulting *harm* to the plaintiff measurable in damages; and (4) *causation, i.e.*, a causal link between the breach of duty and the harm."

*Id.* (internal quotation marks omitted; emphasis in original). In a legal malpractice case, a plaintiff "must show not only that the attorney was negligent, but also that the result would have been different except for the negligence." *Id.* (internal quotation marks omitted). Thus, the "jury in the malpractice case is called upon, in effect, to decide what the outcome for plaintiff would have been in the earlier case if it had been properly tried, a process that has been described as a 'suit within a suit.'" *Chocktoot v. Smith*, 280 Or 567, 570, 571 P2d 1255 (1977). "If the jury determines that the defendant was negligent but concludes that the outcome of the underlying case would have been the same in all events, the defendant's negligence is deemed not to have caused the plaintiff's harm." *Woods v. Hill*, 248 Or App 514, 524-25, 273 P3d 354 (2012).

Applied to an attorney's conduct *at trial*, that standard for causation means that "the client must show that he would have won the first suit as one step in order to win the second one." *Harding v. Bell*, 265 Or 202, 205, 508 P2d 216 (1973) (internal quotation marks omitted). In other words, the client must demonstrate "the existence of a valid cause of action or defense which, had it not been for the attorney's * * * negligence, would have brought about a judgment favorable to the client in the original action." *Id.*; *see also Milton v. Hare*, 130 Or 590, 598, 280 P 511 (1929) ("Unless plaintiff had a good cause of action against Lohmire, whom she accuses of having cheated and defrauded her, she has no cause of action against [her attorneys]. Unless she had a good cause of action against Lohmire for fraud, she lost nothing by the conduct of [the] defendants, even though they were guilty of gross negligence * * *."). Thus, the trial court did not misstate the law in its instruction that an attorney is not "liable for alleged negligence in how he handled a client's case at trial if the clients had no valid claim for relief to begin with, because the attorney's conduct could not be a cause of any injury or damage to the clients."

Although plaintiffs observe that they alleged malpractice based on, among other things, defendant's failure to settle the case before trial and his decision to take the case to trial in the first place, the court gave instructions on causation relating to those issues. The court specifically

instructed the jury as to all the ways that each party alleged the other was negligent, and, in addition to the instruction specific to an attorney's conduct at trial, the court instructed the jury more generally on causation in the legal malpractice context. It instructed:

> "If you find the defendant was negligent as claimed by the plaintiff[s], then you must decide whether that negligence caused any loss to the plaintiff[s].

> "In determining whether the defendant's alleged negligence in fact resulted in a less favorable outcome for the plaintiff[s], you must first determine what the outcome for the plaintiff[s] would have been had the defendant not been negligent.

> "If that outcome that would have occurred is no more favorable than the outcome that did occur, then the plaintiffs' loss or damage cannot be—have been caused by the defendant."

Thus, to the extent plaintiffs assert that the challenged instruction was too limited, in the context of all the instructions, it was not likely to have created an erroneous impression of the law in the minds of the jurors.

Finally, we observe that, in any event, plaintiffs do not cogently explain how the jury instruction could have been prejudicial in light of the jury's verdict in this case. Although, in their reply brief, plaintiffs appear to assert that the challenged instruction would lead the jury to believe that the attorney could not be liable for the conduct alleged in this case (a contention that we have rejected), the jury did not so conclude. Instead, the jury found that defendant was negligent and that his negligence caused damages to plaintiffs. However, as noted, the jury also found that plaintiffs themselves were negligent and that their negligence was a cause of their own damages, and concluded that plaintiffs' percentage of fault was 75 percent, while defendant's was 25 percent. In their contentions relating to the jury instruction, plaintiffs do not explain how, given the fact that the jury found both negligence and causation on defendant's part, the jury instruction could have nonetheless been harmful.

For all of those reasons, we reject plaintiffs' contention that the trial court erred in giving the instruction in question.

Affirmed.