113 P.3d 983 (2005)
200 Or. App. 182
Donna WEST, Personal Representative of the Estate of Wendell Lee West, Appellant,
v.
ALLIED SIGNAL, INC., individually and as successor-in-interest to Allied Corp., successor-in-interest to Bendix Corp.; Borg-Warner Corporation, a Delaware corporation; Carlisle Companies, Inc., a Delaware corporation, individually and as successor-in-interest to Carlisle Corp.; CH Murphy/Clark-Ullman, Incorporated, an Oregon corporation, individually, and as successor-in-interest to CH Murphy, and as successor-in-interest to Clark-Ullman, Inc.; Daimler Chrysler Corporation, as successor-in-interest to Chrysler Corporation; Ferodo America, Inc., a Delaware corporation, individually and as successor-in-interest to Nuturn Corporation; Ford Motor Company, a Delaware corporation; General Motors, a Delaware corporation; G.I. Joe's, an Oregon corporation; Metalclad Insulation Corporation, a California corporation, individually and as successor-in-interest to Pacific Asbestos, Inc., Metalclad Insulation Corporation of Oregon, Metalclad Corporation, Metalclad Development Corporation, The Metalclad Group, Inc., Metalclad Products Corporation, Metalclad Insulation Corporation of Washington, Metalclad Supply, Inc., and Bower Industries, Inc.; Metalclad Insulation Corporation of Oregon, an Oregon corporation, individually and as successor-in-interest to Pacific Asbestos, Inc., Metalclad Insulation Corporation, Metalclad Corporation, Metalclad Development Corporation, The Metalclad Group, Inc., Metalclad Products Corporation, Metalclad Insulation Corporation of Washington, Metalclad Supply, Inc., and Bower Industries, Inc.; Metalclad Corporation, a Delaware corporation, individually and as successor-in-interest to Pacific Asbestos, Inc., Metalclad Insulation Corporation of Oregon, Metalclad Insulation Corporation, Metalclad Development Corporation, The Metalclad Group, Inc., Metalclad Products Corporation, Metalclad Insulation Corporation of Washington, Metalclad Supply, Inc., and Bower Industries, Inc.; Metalclad Development Corporation, a California corporation, individually and as successor-in-interest to Pacific Asbestos, Inc., Metalclad Insulation Corporation of Oregon, Metalclad Insulation Corporation, Metalclad Corporation, The Metalclad Group, Inc., Metalclad Products Corporation, Metalclad Insulation Corporation of Washington, Metalclad Supply, Inc., and Bower Industries, Inc.; The Metalclad Group, Inc., a California corporation, individually and as successor-in-interest to Pacific Asbestos, Inc., Metalclad Insulation Corporation of Oregon, Metalclad Insulation Corporation, Metalclad Corporation, Metalclad Development Corporation, Metalclad Products Corporation, Metalclad Insulation Corporation of Washington, Metalclad Supply, Inc., and Bower Industries, Inc.; Metalclad Products Corporation, a California corporation, individually and as successor-in-interest to Pacific Asbestos, Inc., Metalclad Insulation Corporation of Oregon, Metalclad Insulation Corporation, Metalclad Corporation, Metalclad Development Corporation, The Metalclad Group, Inc., Metalclad Insulation Corporation of Washington, Metalclad Supply, Inc., and Bower Industries, Inc.; Metalclad Supply, Inc., a California corporation, individually and as successor-in-interest to Pacific Asbestos, Inc., Metalclad Insulation Corporation of Oregon, Metalclad Insulation Corporation, Metalclad Corporation, Metalclad Development Corporation, The Metalclad Group, Inc., Metalclad Insulation Corporation of Washington, Metalclad Products Corporation, and Bower Industries, Inc.; Metalclad Insulation Corporation of Washington, a Washington corporation, individually and as successor-in-interest to Pacific Asbestos, Inc., Metalclad Insulation Corporation of Oregon, Metalclad Insulation Corporation, Metalclad Corporation, Metalclad Development Corporation, The Metalclad Group, Inc., Metalclad Products Corporation, *984 Metalclad Supply, Inc., and Bower Industries, Inc.; Metropolitan Life Insurance Company, a New York corporation; Pneumo Abex Corporation, a Delaware corporation, individually and as successor-in-interest to American Brake Shoe Co. and Abex Corp., Defendants, and
La Grand Industrial Supply Co., an Oregon corporation, Respondent.
0207-06814; A122831.
Court of Appeals of Oregon.
Argued and Submitted March 31, 2005.
Decided June 15, 2005.
Robert K. Udziela, Portland, argued the cause and filed the briefs for appellant.
R. Daniel Lindahl, Portland, argued the cause for respondent. With him on the brief were Jeanne F. Loftis and Bullivant Houser Bailey, PC.
Before HASELTON, Presiding Judge, and LINDER and ORTEGA,[*] Judges.
HASELTON, P.J.
Plaintiff, the personal representative of the Estate of Wendell West, appeals, challenging the allowance of summary judgment in favor of defendant La Grand Industrial Supply Co. on claims arising out of the decedent's alleged exposure to asbestos while working at a foundry in the early 1960s. The trial court concluded that plaintiff had failed to present sufficient evidence to permit a reasonable trier of fact to find that defendant had, in fact, supplied to the foundry asbestos gloves that decedent or his coworkers wore, causing decedent to be injuriously exposed to asbestos fibers. We disagree and, consequently, reverse and remand.
Summary judgment is proper if the "pleadings, depositions, affidavits, declarations and admissions on file show that there is no genuine issue as to any material fact * * *." ORCP 47 C. "No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." Id. In reviewing the allowance of summary judgment here, we draw all reasonable inferences in favor of plaintiff, who was *985 the nonmoving party. Bachmeier v. Tuttle, 195 Or.App. 83, 85, 96 P.3d 871 (2004).
Before recounting the material facts in accordance with the foregoing principles, we must resolve, at least in part, an evidentiary dispute between the parties. In particular, defendant contends that one of the affidavits that plaintiff submitted in opposition to summary judgment  the affidavit of Joachim Hillner, one of decedent's fellow workers at the foundry  was inadmissible because Hillner's affidavit did not comply with the requirements of ORCP 47 D that such affidavits
"[s]hall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant or declarant is competent to testify to the matters stated therein."[1]
The pertinent portions of the Hillner affidavit state as follows:
"I, Joachim Hillner, having been first duly sworn, do hereby depose and say:
"1. My name is Joachim Hillner. I worked at Western Foundry (in Tigard, OR) from 1960 through 1993. In 1960 I began working at Western Foundry as a foundry helper. I worked there intermittently between 1960 and June 1964. In June 1964, I was promoted to the journeyman position of master molder. From June 1964 through 1993 I worked for Western Foundry on a full time basis as a molder and coremaker.
"2. While working at Western Foundry, I and the other workers regularly used and/or wore asbestos-containing products. During my work at Western Foundry, and specifically during the years 1960 through 1965, I and other workers would routinely wear asbestos-containing gloves. The asbestos containing gloves were sold to Western Foundry by La Grand Industrial Supply Company (`La Grand'). La Grand was the major supplier of foundry products (including asbestos gloves) to Western Foundry from 1960 through 1975 and later.
"3. We would specifically refer to the gloves as asbestos gloves. It was important to us that the gloves were asbestos-containing products because we knew that the asbestos protected us from the extreme heat of the foundry. The gloves were kept in stock on the Western Foundry site.
"4. When the workers (including myself) would use asbestos gloves (sold to Western Foundry by La Grand), I personally observed dust being created from the asbestos gloves. I, and everyone in the vicinity, would breathe this dust. This occurred on a regular and sustained basis throughout the 1960 through 1965 time period and later as well.
"* * * * *
"6. When night shift workers wore the asbestos gloves (sold to Western Foundry by La Grand) and picked up and/or cleaned hot castings, a large amount of dust was created. I personally observed this. Dust was created simply by the use of the asbestos gloves (sold to Western Foundry by La Grand). I, and all workers in the vicinity, breathed this dust."[2]
Although defendant challenges the admissibility of the entire Hillner affidavit, defendant is particularly concerned with those portions of the affidavit that pertain to a single, critical matter: Did defendant supply any asbestos gloves to the foundry during the period of decedent's employment? Defendant asserts that nothing in Hillner's affidavit shows that Hillner had personal *986 knowledge about the source of the foundry's asbestos gloves:
"There are a couple of ways the affiant could have provided the necessary foundation testimony. For example, he could have simply testified that he had personal knowledge of the source of Western Foundry's asbestos gloves. Or he could have testified to facts from which the court could reasonably infer that he had such knowledge, such as testimony that his job duties included purchasing supplies such as asbestos gloves. But the affidavit contains no such testimony.
"* * * Moreover, the affidavit says Joachim Hillner worked at Western Foundry as a foundry helper, molder, and coremaker. Nothing about that testimony would permit an inference that the affiant knew who sold asbestos gloves to Western Foundry. The affiant testified that his job put him out in the foundry, working around hot castings. His job was not working in the office, ordering supplies."
(Footnote omitted.) Plaintiff responds that ORCP 47 D does not require that the affiant use any "magic words." That is, that nothing in the rule requires the affiant to "state" that he or she is competent to testify from personal knowledge. Rather, plaintiff continues, the rule, by its terms, merely requires that affidavits be "made" on personal knowledge and "show affirmatively" that the affiant is competent to testify on the matters stated. ORCP 47 D (emphasis added). Plaintiff contends that those requirements were satisfied in this case:
"Here  certainly as to the conditions of the Western Foundry workplace  West and Hillner were competent to testify, and did testify from personal knowledge. They were there, day in and day out (or, in West's case, night in and night out), working in a hot, dusty, dirty environment.
"As to Hillner's affidavit that La Grand sold asbestos-containing gloves to Western Foundry, the same is true: he was there, he observed, he reported. The work is hot, dirty and dusty. Workers were well aware of the utensils they used to avoid burn injuries. They referred to the gloves they used as `asbestos' gloves, and knew that they needed the protection of asbestos gloves from the intense heat of the foundry."
Further, with respect to Hillner's identification of defendant as the supplier of the foundry's asbestos gloves, plaintiff asks rhetorically:
"Cannot a clerk at the local Safeway competently state in an affidavit: `United Parcel Service picked up our deliveries from April to December, 2004'? Or, a painter of many years' seniority: `We used lead-based paint at Joe's Body Shop from 1964 to 1972' without actually stating that he had `personal knowledge' of that fact? Common sense answers the questions posed `yes[.]'"
We agree with plaintiff that ORCP 47 D does not require an explicit statement by the affiant as to his or her personal knowledge and competence. Cf. Sisters of St. Joseph v. Wyllie, 120 Or.App. 474, 477-78, 852 P.2d 941 (1993) (ORCP 47 E "does not require the recitation of any particular words or phrases"). Rather, the rule's requirements are satisfied if, from the content of the affidavit read as a whole, an objectively reasonable person would understand that statements in the affidavit are made from the affiant's personal knowledge and are otherwise within the affiant's competence.
We also agree with plaintiff that, given that understanding, those portions of Hillner's affidavit that describe the foundry workers' use of asbestos gloves, the dust created from the use of those gloves, and the pervasive dusty conditions in the foundry are all admissible. The far more difficult question of admissibility is (as the parties appreciate) the admissibility of Hillner's statements identifying defendant as the supplier of asbestos gloves used at the foundry. However, we need not resolve that question. For the reasons that follow, we conclude that, regardless of those "supplier-identification" portions of Hillner's affidavit, the balance of the summary judgment record, when viewed in the light most favorable to plaintiff, is sufficient to support a finding that defendant, in fact, supplied asbestos gloves to Western Foundry and that decedent was injuriously *987 exposed during his employment to asbestos fibers from those gloves.
The balance of the summary judgment record, including attendant reasonable inferences, discloses the following facts: Decedent worked on the night shift at Western Foundry in Tigard in 1963 and 1964. During that employment, decedent and his coworkers used asbestos gloves provided by their employer. The use of those gloves created asbestos dust  microscopic fibers suspended in the atmosphere  in the workplace. Even a single exposure to such asbestos fibers can cause mesothelioma, the asbestos-related disease that was the primary cause of decedent's death. Other than knowing that Western Foundry provided his gloves, decedent had no knowledge of who manufactured, supplied, or distributed the gloves.
Defendant is an industrial supply company. Among the products that defendant supplied to its customers from 1961 to 1972 were gloves, including asbestos gloves.[3] From April 1964 to December 1964, while decedent was working at Western Foundry, defendant sold at least $14,000 in industrial products to Western Foundry. Nothing in the record specifically identifies the nature of those products and, particularly, whether they included asbestos gloves. There is no evidence in the summary judgment record of Western Foundry purchasing industrial supplies from any other source during the period of decedent's employment.
Thus, reduced to its essentials, the summary judgment record would permit a jury to find that: (1) Western Foundry provided asbestos gloves to its workers, including decedent; (2) defendant offered a variety of products, including asbestos gloves, to its industrial customers; (3) Western Foundry bought a substantial amount of goods  at least $14,000 in unspecified products  from defendant during decedent's employment; and (4) no other supplier of industrial products to Western Foundry is identified in this record.
From those facts, a juror could reasonably infer, without impermissible speculation, that (a) Western Foundry purchased its asbestos gloves from a third-party supplier (i.e., the foundry did not make its own gloves); (b) defendant's product line included asbestos gloves; (c) defendant was Western Foundry's sole source of industrial supply products during decedent's employment; and, thus, (d) defendant was the probable source of the asbestos gloves that decedent and his coworkers wore. Of course, that is not the only plausible inference that could be drawn from the facts; nevertheless, it is reasonable and permissible. See State v. Miller, 196 Or.App. 354, 358, 103 P.3d 112 (2004) ("The inference need not inevitably follow from the established facts; rather, if the established facts support multiple reasonable inferences, the jury may decide which inference to draw."); see also State v. Bivins, 191 Or.App. 460, 467, 83 P.3d 379 (2004) (addressing "stacking of inferences": "[T]he established facts would support multiple reasonable inferences[,] * * * which inference to draw is for the jury to decide.").[4]
*988 With that inferential link so forged, a juror could further find that decedent's mesothelioma was caused by exposure to asbestos dust from the gloves that defendant supplied. See Purcell v. Asbestos Corp., Ltd., 153 Or.App. 415, 423, 959 P.2d 89 (1998), rev. den., 329 Or. 438, 994 P.2d 126 (1999) (under Oregon law, once it is established that asbestos was present in the workplace," `it is the jury's task to determine if the presence of that asbestos played a role in the occurrence of the plaintiff's injuries'" (quoting Ingram v. AC and S, Inc., 977 F.2d 1332, 1343-44 (9th Cir.1992))). Consequently, the trial court erred in granting summary judgment.
Reversed and remanded.
NOTES
[*] Ortega, J., vice Richardson, S.J.
[1] Defendant also suggests, in passing, that the affidavit in opposition to summary judgment that decedent executed before his death also did not comply with ORCP 47 D. However, after raising that suggestion, defendant concedes that the admissibility of decedent's affidavit "doesn't matter":

"Whether this Court considers the West affidavit or not makes no difference to the case's outcome because it contains no testimony relevant to whether any asbestos gloves, sold by La Grand, were present at Western Foundry when Plaintiff worked there.
"On the other hand, this appeal turns on the admissibility of certain testimony in the Hillner affidavit."
[2] Other paragraphs of the Hillner affidavit further describe the "dusty" environment at the foundry and include similar parenthetical references to the asbestos gloves as being "sold to Western Foundry by [defendant]."
[3] In his deposition, Lawrence Schick, a vice president and part-time salesperson for defendant, testified generally about defendant's sale of gloves over that period and acknowledged that defendant sold asbestos gloves. Schick did not purport to qualify his testimony regarding asbestos gloves by stating that defendant's sales of those products occurred only in a more limited period, e.g., after decedent's employment at Western Foundry. Accord Austin v. A.J. Zinda Co., 196 Or.App. 262, 268, 101 P.3d 819 (2004), rev. den., 338 Or. 374, 110 P.3d 113 (2005) (noting that the plaintiff's former employer had ordered supplies and materials from the defendant "throughout" a 13-year period and that such products had "includ[ed]" asbestos-containing products).
[4] In Bivins, 191 Or.App. at 467, 83 P.3d 379, we quoted with approval the following observation from Tose v. First Pennsylvania Bank, N.A., 648 F.2d 879, 895 (3d Cir.), cert. den., 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981):

"`The line between a reasonable inference that may permissibly be drawn by a jury from basic facts in evidence and an impermissible speculation is not drawn by judicial idiosyncrasies. The line is drawn by the laws of logic. If there is an experience of logical probability that an ultimate fact will follow a stated narrative of historical fact, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts. As the Supreme Court has stated, "the essential requirement is that mere speculation be not allowed to do duty for probative facts after making due allowance for all reasonably possible inferences favoring the party whose case is attacked."
Galloway v. United States, 319 U.S. 372, 395, 63 S.Ct. 1077, 87 L.Ed. 1458 (1943).'"