TOOKEY, J.
*844 This legal malpractice case has its beginnings in a Tri-Met bus striking five pedestrians in a Portland crosswalk. Plaintiffs, Ryan and Jamie Hammel, allege, among other points, that defendants, attorney Mark McCulloch and the law firm of Powers McCulloch & Bennett, LLP, were negligent in failing to pursue claims against certain entities in connection with the personal injury litigation that defendants commenced on plaintiffs' behalf as a result of being struck by the Tri-Met bus. The trial court granted summary judgment to defendants on the grounds that plaintiffs could not establish the "causation" and "damages" elements of their legal malpractice claim. Plaintiffs appeal the trial court's judgment in favor of defendants. For the reasons that follow, we reverse the grant of summary judgment to defendants and remand for further proceedings.
We review a trial court's grant of summary judgment to determine whether there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. ORCP 47 C.[1] "That standard is satisfied if, viewing the relevant facts and all reasonable inferences in the light most favorable to the nonmoving party-here, plaintiff[s]-no objectively reasonable juror could return a verdict for [plaintiffs] on the matter that is the subject of the motion for summary judgment." Hinchman v. UC Market, LLC , 270 Or. App. 561, 566, 348 P.3d 328 (2015) (internal quotation marks omitted); see also Mason v. BCK Corp. , 292 Or. App. 580, 587, 426 P.3d 206, rev. den. , 363 Or. 817, 431 P.3d 420 (2018) (in analyzing a motion for summary judgment, "the court determines whether there is 'some evidence' or 'any evidence' that presents a genuine issue of material fact for the jury to resolve"). We state the facts consistently with that standard.
I. FACTS
A. History of the Underlying Litigation
In April 2010, a Tri-Met bus struck five pedestrians in a crosswalk in Northwest Portland. Plaintiffs, as well as *845 Robert Gittings, were injured in the bus accident, but survived their injuries. The two other individuals who were struck by the bus, Danielle Sale and Jenee Hammel, died as a result of their injuries. *620 Subsequently, the personal representative of the Estate of Jenee Hammel, the personal representative of the Estate of Danielle Sale, and Gittings (the products-liability claimants), filed wrongful death and personal injury claims against Tri-Met. Additionally, the products-liability claimants filed claims against the manufacturer of the bus, New Flyer, and against the manufacturers, Hadley and Rosco, of a side-view mirror that was installed on the bus.
In October 2010, plaintiffs retained defendants to represent them in connection with the injuries that they had sustained as a result of the bus striking them. After consultation with defendants, plaintiffs asserted claims against Tri-Met, but not against New Flyer, Hadley, or Rosco. Less than a month after asserting their claims against Tri-Met, plaintiffs contacted a different attorney, Michelle Burrows, who eventually replaced defendants as attorney of record in the litigation. By the time that Burrows replaced defendants, the statute of limitation had run on plaintiffs' unasserted claims against New Flyer, Hadley, and Rosco. Subsequently, plaintiffs' and the products-liability claimants' lawsuits were consolidated.
As a result of the lawsuits filed against it, Rosco entered a global settlement with the products-liability claimants in the amount of $225,000. The $225,000 was equally divided among the three products-liability claimants, with each claimant receiving $75,000. Additionally, Hadley settled with each of the products-liability claimants for $100,000.
Tri-Met and New Flyer entered a settlement with plaintiffs and the products-liability claimants. Specifically, Tri-Met and New Flyer each agreed to pay $2 million in exchange for plaintiffs and the products-liability claimants releasing their claims. The question of how the total settlement fund of $4 million would be distributed among plaintiffs and the products-liability claimants was left to plaintiffs and the products-liability claimants, and their *846 respective attorneys, to determine, which they subsequently did.
The $2 million global settlement proceeds received from Tri-Met were distributed as follows:
• $603,911 to the Estate of Jenee Hammel;
• $546,939 to Gittings;
• $524,150 to the Estate of Danielle Sale; and
• $325,000 to plaintiffs.
The $2 million global settlement proceeds received from New Flyer were distributed as follows:
• $721,089 to the Estate of Jenee Hammel;
• $653,061 to Gittings; and
• $625,850 to the Estate of Danielle Sale.
Thus, plaintiffs received 16.25 percent of the $2 million paid by Tri-Met, but none of the $2 million that was paid by New Flyer to the products-liability claimants. Instead, according to plaintiffs, the $2 million that was paid by New Flyer was "simply redistributed to the [products-liability claimants] in exact mathematically increased proportion to what they had received from Tri-Met." That is, "the distribution of New Flyer's $2 million was not a renegotiation by the attorneys and clients involved," but rather "a simple duplication of the Tri-Met negotiations, without [plaintiffs]."
Plaintiffs did not participate in the distribution of the $2 million global settlement received from New Flyer, the $225,000 global settlement received from Rosco, or the $100,000 settlements received from Hadley, because defendants did not file claims against New Flyer, Rosco, or Hadley.
B. Procedural History of the Legal Malpractice Case
After resolution of their claims against Tri-Met, plaintiffs brought an action for legal malpractice against defendants. In the operative complaint, plaintiffs allege that (1) defendants were negligent in failing to file claims against New Flyer, Rosco, and Hadley, and (2) had defendants done *847 so, plaintiffs would have received settlement funds from New Flyer, Rosco, and Hadley.
In the trial court, defendants moved for summary judgment on plaintiffs' legal malpractice claim. Defendants argued that plaintiffs could not prove the essential elements of "harm" and "causation" because there was no *621 evidence that plaintiffs would have recovered "more in the global settlement if they had *** alleg[ed] products liability claims."
In opposition to defendants' motion for summary judgment, plaintiffs argued, among other points, that if they had filed a claim against New Flyer it was "highly probable" that plaintiffs "would have received the same distribution of the $325,000 of the New Flyer funds that they had received of the Tri-Met funds." They also argued that because 16.25 percent was their "agreed-upon share" of the Tri-Met settlement funds, it was probable that plaintiffs would have received the same share of the settlement funds paid by Rosco and Hadley if defendants had filed claims against Rosco and Hadley. In opposing defendants' motion for summary judgment, plaintiffs relied on, among other evidence, (1) an October 12, 2016, declaration from Burrows (the Burrows declaration), who, as noted above, replaced defendants as plaintiffs' attorney of record in the underlying litigation, and (2) an October 13, 2016, declaration from Hala Gores (the Gores declaration), who represented the personal representative of the Estate of Jenee Hammel in the underlying litigation.
The trial court granted defendants' summary judgment motion. In a November 9, 2016, letter opinion, the trial court concluded, in pertinent part, that
"[t]he question in this case is how, if at all, would both payors of settlement funds and persons dividing those funds behaved differently if Defendants had pursued a claim against certain products liability defendants. None of the declarations proffered by Plaintiffs serve as a valid basis for a conclusion in that regard. *** The problem is that the question of motive and behavior of either insurance companies or the other plaintiffs can be resolved only by evidence from those parties and not by third-party commentators on what might have happened differently. The motives and *848 behaviors about which the declarants here would testify are either hearsay (that is, based on statements made by the other plaintiffs or insurance company representatives to the declarants), incompetent, or speculative."
On appeal, plaintiffs contend, among other points, that the record permits an inference that, if defendants had sued New Flyer, Rosco, and Hadley, "at the very least plaintiffs would have received the same $325,000 from New Flyer as they had received from Tri-Met, and they almost certainly would have received something significant from Rosco and Hadley."
Defendants contend that plaintiffs were required, but failed, to come forward with admissible evidence showing that the outcome of the global settlement negotiations would have been more favorable to them had defendants asserted the products-liability claims noted above on their behalf against New Flyer, Hadley, and Rosco. Specifically, defendants contend that plaintiffs' appeal fails because (1) plaintiffs "produced no evidence" from New Flyer, Hadley, or Rosco "suggesting that they would have been willing to increase their global settlement payments" if plaintiffs had asserted claims against them and (2) "produced no evidence from the [products-liability claimants] suggesting that they would have accepted less money in settlement if plaintiffs had pleaded products liability claims."
II. ADMISSIBILITY OF THE BURROWS DECLARATION AND THE GORES DECLARATION
In the trial court, defendants made motions to strike certain paragraphs of the Burrows declaration and the Gores declaration, including paragraph 4 of the Burrows declaration and paragraph 11 of the Gores declaration. In paragraph 4 of the Burrows declaration, Burrows states, in pertinent part:
"When Tri-Met and New Flyer settled at the same time ***, each paying $2 million for a total of $4 million in all, [plaintiffs] received $325,000 (16.25%) of the $2 million paid by Tri-Met, but none of the identical $2 million paid by New Flyer. Instead, the New Flyer money that otherwise would have gone to [plaintiffs] was simply redistributed to the [products-liability claimants] in exact mathematically *849 increased proportion to what they had received from Tri-Met. *** Significantly, the distribution *622 of New Flyer's $2 million was not a re-negotiation by the attorneys and clients involved. Instead, it was a simple duplication of the Tri-Met negotiations, without the [plaintiffs]."
In paragraph 11 of the Gores declaration, Gores states:
"[Plaintiffs] did not participate in the distribution of the $2,000,000 global settlement received from New Flyer, the $225,000 global settlement received from Rosco, or the $300,000 ($100,000 per individual) settlement received from Hadley, because their attorney, Mark McCulloch, did not make claims against New Flyer, Rosco and Hadley."
The trial court did not directly rule on defendants' motions to strike, but noted in its letter opinion that it did not "see any foundation for the statements in th[o]se declarations relating to the matter at issue," which the court characterized as "how, if at all, would both payors of settlement funds and persons dividing those funds behaved differently if [d]efendants had pursued a claim against" New Flyer, Hadley, and Rosco. It went on to conclude, as noted above, that "[t]he motives and behaviors about which the declarants here would testify are either hearsay[,] *** incompetent, or speculative."
On appeal, plaintiffs argue that the trial court "ignored" the Gores declaration and the Burrows declaration when ruling on defendants' motion for summary judgment. Defendants, for their part, characterize the trial court as concluding that the Burrows declaration and the Gores declaration were "without foundation, incompetent and inadmissible." Defendants argue that statements in the Gores declaration and the Burrows declaration "about what the parties to settlement negotiations in the underlying litigation might have done if plaintiffs had pled products liability claims [are] inadmissible because [they] lack[ ] any foundation * * *, [are] purely speculative, and thus incompetent."
In light of our analysis below, we consider, in particular, whether paragraph 4 of the Burrows declaration-as excerpted above-and paragraph 11 of the Gores declaration were admissible in resolving defendants' motion for summary judgment.
*850 ORCP 47 D provides that declarations in opposition to summary judgment
"shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant or declarant is competent to testify to the matters stated therein."
We note, however, that " ORCP 47 D does not require an explicit statement by the affiant as to his personal knowledge and competence." West v. Allied Signal, Inc. , 200 Or. App. 182, 190, 113 P.3d 983 (2005) (emphasis in original). Rather, "the rule's requirements are satisfied if, from the content of the affidavit read as a whole, an objectively reasonable person would understand that statements in the affidavit are made from the affiant's personal knowledge and are otherwise within the affiant's competence." Id.
We conclude that an objectively reasonable person would understand that Burrows, who represented plaintiffs and participated in discussions regarding distribution of funds under the settlement agreement between New Flyer, Tri-Met, the products-liability claimants, and plaintiffs, would have personal knowledge of, and be competent to testify to, the method the parties chose to distribute the funds described above.
We also conclude that an objectively reasonable person would understand that Gores, who represented one of the products-liability claimants, would have personal knowledge of, and be competent to testify to, why plaintiffs did not participate in the settlements with New Flyer, Rosco, and Hadley.
Accordingly, we conclude that paragraph 4 of the Burrows declaration, as excerpted above, and paragraph 11 of the Gores declaration were admissible in resolving defendants' motion for summary judgment.
III. SUMMARY JUDGMENT ANALYSIS
An action for legal malpractice is not significantly distinct from an ordinary negligence action. As we have noted, "[i]t is *623 simply a variety of negligence in which a special relationship gives rise to a particular duty that goes *851 beyond the ordinary duty to avoid a foreseeable risk of harm." Watson v. Meltzer , 247 Or. App. 558, 565, 270 P.3d 289 (2011), rev. den. , 352 Or. 266, 286 P.3d 1231 (2012). Accordingly, "in order to prevail in a legal malpractice action, a plaintiff must allege and prove (1) a duty that runs from the defendant to the plaintiff; (2) a breach of that duty; (3) a resulting harm to the plaintiff measurable in damages; and (4) causation , i.e. , a causal link between the breach of duty and the harm." Id. (emphases in original).
Under Oregon negligence law, the element of "causation" ordinarily refers to "causation-in-fact" or "but-for" causation. Id ."That is to say, in order to prevail in a negligence action, a plaintiff must establish that but for the negligence of the defendant, the plaintiff would not have suffered the harm that is the subject of the claim." Id. (emphasis in original). In the legal malpractice context, "that means that, to prevail, a plaintiff must show, not only that the attorney was negligent, but also that the result would have been different except for the negligence." Id. (internal quotation marks omitted); see also Joshi v. Providence Health System , 198 Or. App. 535, 538-39, 108 P.3d 1195 (2005), aff'd , 342 Or. 152, 149 P.3d 1164 (2006) (" 'Cause-in-fact' also has a well-defined legal meaning: it generally requires evidence of a reasonable probability that, but for the defendant's negligence, the plaintiff would not have been harmed."). "Causation may be proved by circumstantial evidence, expert testimony, or common knowledge." Two Two v. Fujitec America, Inc. , 355 Or. 319, 332, 325 P.3d 707 (2014).
With respect to defendants' failure to bring claims against New Flyer, the summary judgment record in this case would permit a reasonable juror to find that (1) at the time that plaintiffs and the products-liability claimants entered into their agreement with New Flyer and Tri-Met to settle for $4 million, neither plaintiffs nor the products-liability claimants knew what share of the New Flyer and Tri-Met settlement funds they would receive, (2) plaintiffs received 16.25 percent of the Tri-Met settlement funds, (3) plaintiffs did not receive any of the New Flyer settlement funds because they did not bring a claim against New Flyer, and (4) the distribution of the $2 million in New Flyer *852 settlement funds was not a renegotiation by the attorneys and clients involved, but a simple mathematical duplication of the Tri-Met negotiations, without plaintiffs.
From those facts, a reasonable juror could further find, without impermissible speculation, that defendants' failure to sue New Flyer caused harm to plaintiffs, as a reasonable juror could infer that, but for that failure, plaintiffs would have received 16.25 percent of the settlement funds paid by New Flyer. That is not the only plausible inference that could be drawn; it is, however, a reasonable and permissible one. See State v. Miller , 196 Or. App. 354, 358, 103 P.3d 112 (2004), rev. den. , 338 Or. 488, 113 P.3d 434 (2005) ("The inference need not inevitably follow from the established facts; rather, if the established facts support multiple reasonable inferences, the jury may decide which inference to draw."); West , 200 Or. App. at 192 n. 4, 113 P.3d 983 (noting that an inference is permissible and not "impermissible speculation" when "there is an experience of logical probability that an ultimate fact will follow a stated narrative of historical fact" and in such case "the jury is given the opportunity to draw a conclusion" (internal quotation marks omitted)).
The above analysis concerning defendants' failure to bring claims against New Flyer is essentially the same with respect to defendants' failure to bring claims against Hadley and Rosco. Regarding defendants' failure to bring claims against Hadley, the summary judgment record in this case would permit a reasonable juror to find that (1) every claimant who brought a claim against Hadley in connection with the April 2010 Tri-Met accident received a settlement of $100,000, regardless of whether the claim concerned an injury, as did the claims brought by Gittings and plaintiffs, or a death, as did the claims brought by the personal representative of the Estate of Danielle Sale and the personal representative of the Estate of Jenee Hammel, (2) plaintiffs were injured *624 in the April 2010 bus accident, and (3) plaintiffs did not participate in the settlements with Hadley because they did not sue Hadley. From those facts, a reasonable juror could further find, without impermissible speculation, that defendants' failure to sue Hadley caused harm to plaintiffs, as a reasonable juror could infer that, but-for that failure, plaintiffs would have received a $100,000 settlement from *853 Hadley. Again, that is not the only plausible inference that could be drawn, but it is a reasonable and permissible one.
Finally, regarding defendants' failure to bring claims against Rosco, the summary judgment record in this case would permit a reasonable juror to find that (1) every claimant who brought a claim against Rosco in connection with the April 2010 Tri-Met accident participated in the $225,000 global settlement and received an equal share of the proceeds of that settlement, regardless of whether the claim concerned an injury, as did the claims brought by Gittings and plaintiffs, or a death, as did the claims brought by the personal representative of the Estate of Danielle Sale and the personal representative of the Estate of Jenee Hammel, (2) plaintiffs were injured in the April 2010 bus accident, and (3) plaintiffs did not participate in the global settlement with Rosco because they did not sue Rosco. From those facts, a reasonable juror could further find, without impermissible speculation, that defendants' failure to sue Rosco caused harm to plaintiffs, as a reasonable juror could infer that, but-for that failure, plaintiffs would have received an equal share of the settlement funds from Rosco. Again, that is not the only plausible inference that could be drawn, but it is a reasonable and permissible one.
Defendants' arguments to the contrary are not persuasive. Defendants rely on Watson for the proposition that in a legal malpractice case a plaintiff's difficulty in proving its case does not "alter [the] burden of proof on the elements of harm and causation." We agree, but, as explained above, in this case, plaintiffs have provided sufficient evidence regarding those elements to survive summary judgment.
Further, we are not persuaded by defendants' argument that plaintiffs' claim fails because plaintiffs "produced no evidence from the [products-liability claimants] suggesting that they would have accepted less money in settlement if plaintiffs had pleaded products liability claims." Contrary to defendants' suggestion, a concession by the parties involved in a transaction is not the only way to prove causation. Cf. Watson , 247 Or. App. at 569, 270 P.3d 289 ("An express concession by another party to a transaction is not the only way to prove causation in a transactional legal malpractice case."). Here, *854 from the evidence in the record, a reasonable juror could find that had defendants brought products-liability claims against New Flyer, Rosco, and Hadley, plaintiffs would have received settlement funds from those entities, as did each of the products-liability claimants.
We have considered defendants' other arguments and they are unavailing.
IV. CONCLUSION
In light of our analysis above, we conclude that the evidence adduced by plaintiffs created a genuine issue of material fact on the elements of causation and harm. Consequently, the trial court erred in granting summary judgment.
Reversed and remanded.

Amendments to ORCP 47 promulgated by the Council on Court Procedures became effective January 1, 2018. Because those amendments do not apply to this case, we apply the 2015 version of ORCP 47. All discussion and citations to ORCP 47 refer to the 2015 version.