Argued and submitted April 22, judgment against William Stevens reversed and remanded; otherwise affirmed September 4, reconsideration denied November 6, petition for review allowed November 26, 1991 (312 Or 525)

William A. STEVENS
and Janice Stevens,
*Appellants,*

*v.*

Joseph D. BISPHAM,
*Respondent.*

(A8904-02189; CA A64459)

816 P2d 700

David Gernant, Portland, argued the cause for appellants. With him on the briefs was Steven L. Myers and Myers & Knapp, Portland.

Janice M. Stewart, Portland, argued the cause for respondent. With her on the brief were McEwen, Gisvold, Rankin & Stewart, Portland.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

WARREN, P. J.

## WARREN, P. J.

Plaintiffs William Stevens and Janice Stevens brought this action against William's former criminal defense attorney. William alleged legal malpractice, and Janice, his wife, alleged loss of consortium. William appeals from a summary judgment that was based on his failure to file his complaint within the time required by the Statute of Limitations.[1] ORS 12.110(1). Defendant purports to cross-assign error to the denial of his motion for summary judgment against Janice. We reverse the summary judgment against William and otherwise affirm.

The court appointed defendant to represent William on November 17, 1986, after he was arrested for robbery, menacing and public indecency. William pleaded no contest to the charges on March 31, 1987. On July 8, 1987, the trial court sentenced him to eight and one-half years in prison. On April 22, 1988, another man confessed to the crimes, and on April 27, 1988, the court vacated William's convictions. On May 21, 1988, he contacted a different attorney and filed this malpractice complaint on April 24, 1989.

After defendant had been appointed in the criminal cases, William and Janice met with him three or four times.[2] William told defendant that he was innocent. William does not read well, so defendant read the police reports to him and discussed the evidence with him. According to the reports, on October 23, 1986, three women in a blue Oldsmobile had stopped at the Sahalie Falls viewpoint and had descended some stairs from the parking area when a man wearing blue jeans, a blue plaid shirt and a dark green ski mask came down the steps and demanded their underwear. He pulled out a knife and waived it at them while he masturbated. Before he fled on foot, he removed his mask, revealing his face to one of the victims, Tabet.

William's probation officer questioned him about the case because of an earlier conviction. He denied committing the crime and offered to take a polygraph examination. In the

---

[1] Although both Janice and William appeal, they do not assign any error relating to Janice's claim.

[2] Plaintiff estimated three or four times, and defendant estimated 10 times.

pre-test interview, he said that he had possibly driven through the area around the time of the crimes to pick up his wife in Paisley, but he had not turned off on the road to Sahalie Falls. He had been wearing black jeans and a blue plaid shirt, but he denied owning a ski mask. The results of the polygraph examination showed that he had been deceptive. He became agitated when he heard that and admitted that he had seen two or three women around the falls area getting into a blue "Datsun or Toyota type vehicle." The examiner began questioning him more aggressively, and William pulled out a pocket knife and threatened suicide.

Tabet picked William's picture out of a photographic display. Several days later, Detective Fredrickson showed Tabet two more recent photographs of William, and she said that she believed that he was the one. Fredrickson checked with William's employer and confirmed that he had not worked on October 23. Janice told Fredrickson that she believed William had been cutting wood on October 23 and that William had not picked her up in Paisley until November 6. She gave Fredrickson William's dark green ski mask and knife. Tabet positively identified the ski mask but could not identify the knife.

William told defendant that, on the day of the crime, he had gone to cut wood with his children and that there were no adults who could confirm his whereabouts. Defendant told him that the state had a strong case. He said that the polygraph results probably would be admissible and would be very damaging. He said that he did not think that he could win an acquittal and that the judge would probably give him a lighter sentence if he pleaded no contest than if he proceeded to trial. On the third day before trial, defendant told William that William needed to decide how he would plead.

A no contest plea was entered. William testified that he had known that it was his decision to make. He had understood from defendant that, if he went to trial and lost, he could be sentenced to 64 years but, if he pleaded no contest, he probably would be sentenced to only 23 years. He had not been sure whether a jury would convict him, because it was the victims' word against his. He testified that, when he entered the plea, he was not satisfied with defendant's representation, because he knew that he was going to go to prison.

He thought that defendant should have done some investigation but did not know what kind of investigation was appropriate. He thought that something would have proved his innocence, but he did not know what. He did not want to plead no contest, but he relied on the advice of defendant.

William alleged in his complaint in this case, *inter alia,* that defendant was negligent in: (1) failing to seek suppression of the photographic identification; (2) failing to investigate; (3) failing to request a line-up; (4) failing to keep plaintiff informed; (5) failing to consult with or refer defendant to a more experienced attorney; (6) advising him to plead no contest; (7) waiving a hearing in mitigation at sentencing; and (8) failing to have him examined by an independent psychiatrist.

Defendant moved for summary judgment on his affirmative defense that both William's and Janice's claims were barred by the Statute of Limitations. The court granted summary judgment against William but, for reasons not apparent on the record, did not decide whether the limitation period had expired for Janice's claim. Defendant states in his brief:

> "The parties agreed that defendant would waive the statute of limitations defense on Janice Stevens' claim for loss of consortium pending the result of this appeal on this issue."

Defendant also moved for summary judgment against Janice for failure to state a claim, but the court denied it. However, at her request, it entered a judgment of dismissal without prejudice under ORCP 54A(2).

■■ We first address William's assignment of error. On review of a summary judgment, we must determine whether a genuine issue of material fact exists and whether defendant was entitled to judgment as a matter of law. ORCP 47C; *Seeborg v. General Motors Corp.,* 284 Or 695, 588 P2d 1100 (1978). The trial court granted summary judgment against William on the basis of ORS 12.110(1), which requires an action to be commenced within two years after the cause of action accrued. A cause of action for legal malpractice accrues when the plaintiff is in fact harmed and knows or should know that the defendant's conduct has caused the harm. *U.S. Nat'l Bank v. Davies,* 274 Or 663, 548 P2d 966 (1976). When a

plaintiff should have discovered that a defendant caused his harm is generally a question of fact. *See Gannon v. Rogue Valley Medical Center,* 92 Or App 314, 316, 758 P2d 873, *rev den* 307 Or 145 (1988).

■     Defendant argues that the limitation period began to run on March 31, 1987, when plaintiff pleaded no contest, which was more than two years before he commenced the action on April 24, 1989. At that time, defendant argues, plaintiff was harmed, knew that he had been harmed and was dissatisfied with defendant's representation. Plaintiff argues that the limitation period began running when he was sentenced on July 8, 1987, because he was not harmed until then, or when defendant ceased representing him on July 9, 1987, because he relied on defendant until then, or when he consulted other counsel on May 21, 1988, because he did not know that defendant had been negligent until then.

■     If William was harmed, he would have known it, when he pleaded no contest. Although he was not sentenced until three months later, the limitation period is not tolled until a plaintiff discovers the full extent of the harm. *Dejonge v. Mutual of Enumclaw,* 90 Or App 533, 752 P2d 1277, *rev den* 306 Or 155 (1988). When William pleaded no contest and the court accepted the plea, he lost the presumption of innocence and his constitutional right to a jury trial. Furthermore, he had then exposed himself to the "[h]umiliation, embarrassment and loss of reputation" that he alleges he suffered.

The next question is whether William knew or should have known when he entered the plea that defendant's allegedly negligent conduct had caused his harm. Defendant contends that this case is controlled by *Melgard v. Hanna,* 45 Or App 133, 607 P2d 795 (1980), in which the plaintiff sued his lawyer and real estate broker after he allegedly had lost $600,000 because of the defendants' negligent acquisition and management of his property. More than two years before the plaintiff commenced the action, he testified in his marital dissolution case that he had received bad advice from the defendants and was losing money from their mismanagement. From that evidence, it was apparent that, at that time, the plaintiff knew that he had been harmed by the defendants' conduct.

This case is more like *Knight v. Rew,* 79 Or App 694, 720 P2d 397, *rev den* 301 Or 445 (1986), another legal malpractice case. The defendant had advised the plaintiff in a marital dissolution case to agree to a property settlement agreement. Soon after the agreement became part of the dissolution judgment, problems arose in interpreting it. The plaintiff testified that, more than two years before she commenced the action, she was dissatisfied, because so many problems had arisen and she felt that the defendant may have been responsible. She also testified that she did not know then whether the terms were reasonable and the problems unavoidable. We held that a genuine issue of material fact existed as to whether she should have known then that she had a malpractice claim.

William testified that, when he pleaded no contest more than two years before he commenced this action, he was dissatisfied with defendant, whom he felt should have done more investigation. However, he also testified that he pleaded no contest in reliance on defendant's advice that he should not go to trial because he probably would be convicted and receive a greater sentence. Because plaintiff believed that he would have been convicted anyway, he could not have then known that defendant's allegedly negligent representation caused him any harm. As in *Knight,* plaintiff was dissatisfied with the situation but may not have known whether it could have been avoided if handled differently. A genuine issue of material fact exists as to when plaintiff should have realized that defendant's allegedly negligent conduct had caused him harm. The trial court erred in granting summary judgment.

■ Defendant makes a so-called cross-assignment of error that the trial court erred in denying his motion for summary judgment against Janice, because no action for loss of consortium arising from legal malpractice should be permissible. A cross-appeal is unnecessary if all that the respondent seeks is to sustain a judgment, *Artman v. Ray,* 263 Or 529, 533, 501 P2d 63, 502 P2d 1376 (1972), but defendant is not seeking to sustain the dismissal without prejudice of Janice's cause of action. He is seeking to obtain a summary judgment against her. *See Stromme v. Nasburg and Co.,* 80 Or App 26, 32 n 2, 721 P2d 847, *rev den* 302 Or 35 (1986).

Because defendant did not cross-appeal, we cannot consider his argument.

Judgment against plaintiff William Stevens reversed and remanded; otherwise affirmed.