596 December 18, 2025 No. 53

IN THE SUPREME COURT OF THE
STATE OF OREGON

Aisling Tucker MOORE-REED,
*Petitioner on Review,*

*v.*

Anthony GRIFFIN,
*Respondent on Review.*

(CC 21CV26445) (CA A177496) (SC S071282)

En Banc

On review from the Court of Appeals.*

Argued and submitted May 8, 2025.

Larry R. Roloff, Eugene, argued the cause and filed the brief for petitioner on review.

Julie A. Smith, Cosgrave Vergeer Kester, LLP, Portland, argued the cause and filed the brief for respondent on review.

Amy Bruning, D'Amore Law Group, P.C., Lake Oswego, filed the brief for *amici curiae* Oregon Justice Resource Center and Oregon Trial Lawyers Association. Also on the brief was Rhett Fraser, The Fraser Law Firm, P.C., Portland.

Janet M. Schroer, Hart Wagner LLP, Portland, filed the brief for *amicus curiae* Oregon State Bar Professional Liability Fund. Also on the brief was Ruth A. Casby.

MASIH, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

_____

* On appeal from Jackson County Circuit Court, Timothy C. Gerking, Judge. 332 Or App 258 (2024) (nonprecedential memorandum opinion).

**MASIH, J.**

In this legal malpractice action, plaintiff alleges that, because of her criminal defense lawyer's negligence, she was charged with murder, incarcerated pretrial, and subjected to unwanted publicity, and, as a result, she suffered both economic and noneconomic harms. The trial court granted defendant's motion for summary judgment, concluding that, under this court's decision in *Stevens v. Bispham*, 316 Or 221, 851 P2d 556 (1993), plaintiff had not suffered a "legally cognizable harm" because she had not been exonerated of any crime. The Court of Appeals affirmed the trial court's ruling on appeal. *Moore-Reed v. Griffin*, 332 Or App 258 (2024) (nonprecedential memorandum opinion). We allowed review to consider whether a client alleging negligence by a criminal defense lawyer must always allege, as a requirement for pleading a legally cognizable claim for legal malpractice, that she was later exonerated. For the reasons set out below, we hold that the answer is no.[1]

## BACKGROUND

Because we are reviewing the trial court's ruling granting defendant's motion for summary judgment on plaintiff's negligence claim, we view the summary judgment record and all reasonable inferences that may be drawn from the record in the light most favorable to plaintiff, the nonmoving party. *Lowell v. Wright*, 369 Or 806, 809, 512 P3d 403 (2022).

Plaintiff shot and killed her uncle in front of her grandmother's house. She claimed that her uncle had been abusing her and taking financial advantage of her grandmother. Just before the shooting, plaintiff used her cellphone to record a video of her uncle as he approached the house. That video captured the shooting. Police arrested plaintiff and seized her cellphone. Neither the investigating

---

[1] In her brief in this court, plaintiff contends that we should overrule *Stevens*. *Stevens* holds that, where a plaintiff sues a criminal defense lawyer for malpractice to recover damages for the harm that the plaintiff suffered as a result of a criminal conviction, the plaintiff has not been harmed in a legally cognizable way unless and until the plaintiff is exonerated. 316 Or at 239. As we will explain, that rule—which we continue to adhere to—does not apply here. For that reason, there is no need for us to consider overruling *Stevens*. And, in any case, plaintiff has not made the kind of showing necessary for the court to consider overruling precedent.

officers nor the prosecutor examined the phone, and they were unaware of the existence of the video. They returned the phone to plaintiff. Plaintiff was charged with first- and second-degree manslaughter and was released on bail.

About six months after plaintiff was arraigned on those charges, the trial court appointed defendant to replace the criminal defense trial counsel that the court had originally appointed to represent her. Plaintiff told defendant about the video and gave him her cellphone. Defendant watched the video and then sent the video to the district attorney's office without plaintiff's knowledge or consent. After viewing the video, the district attorney reconvened the grand jury, presented the video, and obtained a new indictment charging plaintiff with murder. In light of the murder charge, plaintiff's bail was revoked, and she was incarcerated pretrial for 20 months. Defendant withdrew from the representation, and plaintiff was forced to obtain new counsel. Ultimately, the murder charge was dismissed and plaintiff pleaded guilty to a charge of second-degree manslaughter.

Following her conviction, plaintiff sued defendant in negligence, alleging that defendant had been negligent in, among other things, sending the video to the district attorney without her knowledge or consent. She alleged that, as a direct result of defendant's negligence, she was charged with murder and her bail was revoked, which, in turn, led to significant economic and noneconomic harm, including, among other things, losing wages, incurring significantly higher attorney fees, and suffering depression and other emotional harms, and she became subject to international notoriety because the video was widely disseminated, which resulted in her suffering damage to her reputation and other harms.

Defendant filed an answer admitting, in part, the allegations in the complaint and raising as an affirmative defense that plaintiff had not suffered any legally cognizable harm. Defendant then moved for summary judgment on his affirmative defense, arguing that, under this court's decision in *Stevens*, a plaintiff alleging legal malpractice by a criminal defense attorney following a conviction must be able to show that the plaintiff has been "exonerated of the criminal offense through reversal on direct appeal, through

post-conviction relief proceedings, or otherwise." 316 Or at 238. Defendant argued that plaintiff remained a convicted offender and, therefore, she had not suffered a legally cognizable harm. The trial court granted defendant's summary judgment motion, explaining that it was constrained to follow *Stevens* and that *Stevens* mandated the conclusion that plaintiff did not have a legally cognizable claim because she had not been exonerated.

Plaintiff appealed the trial court's ruling to the Court of Appeals, which affirmed. The Court of Appeals agreed with the trial court that plaintiff's legal negligence claim is foreclosed by this court's opinion in *Stevens*. The court pointed to the following passage from *Stevens*, which it described as "unequivocal":

> " 'We hold that, in order for one convicted of a criminal offense to bring an action for professional negligence against that person's criminal defense counsel, the person must, in addition to alleging a duty, its breach, and causation, allege "harm" in that the person has been exonerated of the criminal offense through reversal on direct appeal, through post-conviction relief proceedings, or otherwise.' "

*Moore-Reed*, 332 Or App at 261 (quoting *Stevens*, 316 Or at 238). The Court of Appeals then explained its understanding that,

> "[h]ere, [plaintiff] was convicted of a criminal offense and claims that her attorney's negligence contributed to her conviction. Thus, under *Stevens*, she cannot allege harm for purposes of a professional negligence claim until she has 'been exonerated' of the crime of which she was convicted. Plaintiff has not been exonerated of any crime."

*Id*.

Plaintiff petitioned for review of the Court of Appeals decision, and this court allowed review.

## ANALYSIS

As discussed, defendant moved for, and the trial court granted, summary judgment. In reviewing a grant of a summary judgment motion, the appellate courts consider the pleadings and any evidence that the parties have submitted in support of or in opposition to the summary judgment motion, in the light most favorable to the nonmoving party.

ORCP 47 C; *Eklof v. Steward*, 360 Or 717, 729, 385 P3d 1074 (2016) ("When a party seeks summary judgment, a court must view the pleadings, as well as any 'depositions, affidavits, declarations and admissions' that the parties have submitted in support of or in opposition to the summary judgment motion, in the light most favorable to the non-moving party." (Quoting ORCP 47 C.)). In this case, defendant attached to his motion for summary judgment plaintiff's guilty plea petition, plaintiff's judgment of conviction for second-degree manslaughter, and a print-out of the Oregon eCourt Case Information trial court register for her criminal case. Those documents, therefore, are part of the summary judgment record in this case. The record also includes plaintiff's complaint and the affidavits that plaintiff submitted in response to defendant's motion for summary judgment.

Our review is limited to the ground that defendant asserted in the motion for summary judgment, namely, that plaintiff has not raised a genuine issue of material fact as to defendant's negligence because, under *Stevens*, she cannot state a claim for relief without showing that she had suffered legally cognizable harm—that she had been exonerated of her crime of conviction. To prevail on a motion for summary judgment, the moving party must demonstrate that "[n]o genuine issue as to a material fact exists," which, in turn, requires a party to show that, "based on the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." ORCP 47 C.

Both the trial court and the Court of Appeals relied on this court's decision in *Stevens* to determine that plaintiff had failed to raise a genuine issue of material fact for trial and that defendant was entitled to judgment as a matter of law because plaintiff had not alleged a legally cognizable harm—in this case, that she had been exonerated. As we will explain, *Stevens* does not apply here. The harm alleged in *Stevens* was the plaintiff's conviction, whereas, viewed in the light most favorable to plaintiff, plaintiff alleges that defendant's negligence caused at least some harm that is unrelated to the conviction itself. Specifically, plaintiff's complaint

does not take issue with defendant's representation on the manslaughter charge on which she was ultimately convicted. Rather, viewed in the light most favorable to plaintiff, the complaint alleges that defendant's negligence contributed to the amended indictment that charged her with the more serious crime of murder, a charge that was eventually dismissed. That harm is different from the harm alleged in *Stevens*.

The plaintiff in *Stevens* had been charged with robbery and other crimes. He was convicted of the charged offenses, and he was incarcerated for over eight years. The plaintiff's convictions were vacated after another person confessed to the crimes. The plaintiff then sued his defense counsel for malpractice. The defendant moved for summary judgment on the ground that the two-year statute of limitations for legal malpractice actions had run. The trial court granted that motion. On appeal, the Court of Appeals reversed and remanded, concluding that a genuine issue of material fact existed as to when the plaintiff's claim had accrued for purposes of the statute of limitations. *Stevens v. Bispham*, 108 Or App 588, 594, 816 P2d 700 (1991).

On review, this court affirmed the decision of the Court of Appeals, but on a different ground. To determine whether the claim was barred by the statute of limitations, this court began by examining when a criminal defendant has suffered a legally cognizable harm in a case like the plaintiff's, asking, "When is a person who has been convicted of a criminal offense *deemed to have been 'harmed'* by any negligence of defense counsel *that the person alleges contributed to the person's conviction*?" *Stevens*, 316 Or at 229 (emphasis added). The court held that the claim accrued when the plaintiff's convictions were overturned. In so concluding, the court stated:

> "[I]t is inappropriate to permit a person who has been convicted of criminal offense to assert in the courts a claim for legal malpractice *in connection with that conviction* unless and until the person has challenged successfully the conviction through the direct appeal or post-conviction processes now provided by Oregon law, or the person otherwise has been exonerated of the offense."

*Id.* at 230-31 (emphasis added).

The emphasized wording in the two passages just quoted makes clear that the court's ruling in *Stevens* was limited to legal malpractice claims in which the plaintiffs had alleged that their defense counsel's negligence harmed them by contributing to their convictions.

Thus, in *Stevens*, the plaintiff claimed that the defendant's negligence resulted in his wrongful conviction, and the issue presented there was whether the statute of limitations barred that claim. It was in that context that this court made the "unequivocal" statement that the Court of Appeals relied on in affirming the trial court's grant of summary judgment in this case—holding that, for a person convicted of a criminal offense to bring an action against that person's criminal defense counsel for professional negligence that led to the person's conviction, the person must allege legally cognizable "harm," which, in the context of such a case, requires showing that the person has been exonerated of the criminal offense. *Stevens*, 316 Or at 238.

In this case, the Court of Appeals appears to have understood the limitations of this court's holding in *Stevens*, because it based its conclusion that summary judgment in defendant's favor was appropriate on its understanding that, in this case, as in *Stevens*, plaintiff "claims that her attorney's negligence *contributed to her conviction* [but she] has not been exonerated of any crime." *Moore-Reed*, 332 Or App at 261 (emphasis added). However, that statement reflects that the court did not evaluate the summary judgment record in the light most favorable to plaintiff, which, when viewed in that light, shows that plaintiff suffered at least some harm unrelated to the manslaughter conviction.

Viewed in the light most favorable to plaintiff, the summary judgment record contains evidence that defendant's negligence in providing the cellphone video to the district attorney resulted in the amended indictment charging her with murder, which caused her bail to be revoked and caused her to be incarcerated for 20 months, which, in turn, caused her to lose wages, impaired her legal defense, and required her to obtain new defense counsel. Plaintiff also alleges that, as a result of defendant's negligence, she suffered extreme emotional harm in the form of increased

depression, suicidal thoughts and behaviors, and despondency. Finally, plaintiff alleges that, as a result of defendant's negligence, she suffered public ridicule and irreparable and ongoing harm to her reputation, because the cellphone video was released to the public and published on the internet, placing her trauma in public view both nationwide and worldwide, as Dateline NBC created an episode and a podcast based on her criminal case, focusing on the cellphone video that defendant had provided to the district attorney. As is evident from that description, plaintiff alleges at least some harm that is unrelated to her conviction for manslaughter.

Defendant disagrees; he argues that plaintiff does, in fact, allege that his negligence contributed to her conviction. He bases that contention on two facts: (1) that plaintiff alleged in her complaint that defendant's negligence caused "significant harm to her legal defense" and (2) that plaintiff had stated, in her response to defendant's motion for summary judgment in the trial court and in her affidavit attached to that response that, but for defendant's alleged negligence, she would not have taken the plea deal that had been offered to her, because her lengthy pretrial incarceration influenced her decision to plead guilty. To the extent that those facts suggest that some part of plaintiff's complaint alleges that defendant's negligence contributed to her conviction for manslaughter, then, under *Stevens*, that part of the complaint would not raise a genuine issue of material fact without a showing of legally cognizable harm, in this case, exoneration.[2]

However, it is undeniable that at least some of plaintiff's allegations describe harms that are completely

---

[2] In context, the allegation that defendant's negligence harmed plaintiff's legal defense could also be understood to refer to the facts that she was forced to start over with new counsel after defendant provided the video to the prosecution and withdrew from the representation and that defending against a murder charge is more complicated than defending against a manslaughter charge. However, we need not resolve now the question whether any of plaintiff's allegations amount to a claim that defendant's negligence contributed to her conviction for manslaughter and, thus, would not be viable under *Stevens* without a showing of legally cognizable harm, in this case, exoneration. As noted, the only question now before the court is whether plaintiff has raised a genuine issue of material fact as to some legally cognizable harm and whether defendant was entitled to summary judgment as a matter of law.

unrelated to her conviction. For instance, plaintiff alleges that defendant's negligence in providing the cellphone video to the prosecutor resulted in its worldwide dissemination and caused her to suffer public ridicule and irreparable and ongoing harm to her reputation. That alleged harm is not related to plaintiff's conviction, and nothing in *Stevens* can be understood to bar plaintiff from litigating that claim. Other allegations of harm also appear to be unrelated to plaintiff's conviction—specifically, plaintiff's allegation that, as a result of being charged with murder due to defendant's negligence, she suffered extreme emotional distress, increased depression, and suicidal thoughts and behaviors.[3] We hold, therefore, that a reasonable jury could find that defendant's negligence caused at least some harm unrelated to the harm that she suffered from her manslaughter conviction and, therefore, that *Stevens* did not require the trial court to grant defendant's motion for summary judgment.

Defendant insists that, even if the facts of the case are distinguishable, *Stevens* is nonetheless controlling because its holding is "broad and unqualified." According to defendant, *Stevens* holds that a convicted person cannot bring a legal malpractice claim against defense counsel unless counsel "failed to meet the established standards in a way that would make post-conviction relief appropriate" and until the convicted person "has been exonerated of the criminal offense." *Stevens*, 316 Or at 231, 238. Defendant, as did the Court of Appeals, takes those statements out of context. As we have just explained, it is clear in context that the court in *Stevens* confined its holding to those cases in which the plaintiff alleges that defense counsel's negligence *"contributed to the person's conviction*[.]" *Id.* at 229 (emphasis added).

Defendant also contends that, even if *Stevens* is distinguishable, the policy reasons that this court relied on in *Stevens* in requiring a criminal defendant to prove exoneration in order to state a cause of action against defense counsel for negligence in a criminal case apply equally in this case. As defendant correctly observes, the court's conclusion in *Stevens* was driven by three policy considerations. However,

---

[3] Ultimately, it will be up to the trial court to sort out which allegations are viable, depending on how the parties choose to proceed on remand.

none of those policy considerations logically applies to harms alleged to have resulted from the defendant's negligence and not the conviction itself.

The first consideration described in *Stevens* was that Oregon's criminal statutes are comprehensive and provide a wide range of protections to those accused and convicted of criminal offenses, including provisions intended to ensure the constitutional right to competent and effective representation at all stages of the proceeding and providing the right to collaterally attack a conviction and sentence on the ground that counsel did not provide competent and effective representation. *Id.* at 229-30. The court explained in *Stevens* that, when a criminal defendant's legal malpractice claim against defense counsel is that defense counsel's negligence contributed to the client's conviction,

> "the gravamen of [the claim] will be that * * * defense counsel failed in some way to perform counsel's obligations in accordance with the standards of the legal community. But the nature and extent of counsel's obligations in this specialized area of the law are matters of constitutional import[,] * * * [and] those constitutional standards specifically are supposed to be vindicated by proceedings under Oregon's post-conviction relief law. In view of the extensive statutory provisions already in place for the protection of convicted offenders, we think that it would be inappropriate to treat victims of alleged negligence by defense counsel as having been 'harmed,' for the purpose of maintaining a legal malpractice action in cases like this, unless they show that their counsel failed to meet the established standards in a way that would make post-conviction relief appropriate."

*Id.* at 231 (citation omitted).

Based on the court's reasoning in that passage, defendant maintains that, even if the court were to conclude that plaintiff is not alleging harm from the conviction itself, allowing her to pursue a malpractice action in this case would nonetheless be inconsistent with the comprehensive criminal justice system for protecting criminal defendants' rights. Specifically, defendant argues, allowing plaintiff to pursue her claim against defendant would be inconsistent with the express terms of the post-conviction statutes. Defendant points out that ORS 138.530(1) lists the specific

grounds for seeking post-conviction relief,[4] including, as relevant here, a substantial denial in the proceedings of the petitioner's constitutional rights that "rendered the conviction void." ORS 138.530(1)(a). In addition, he points out that ORS 138.540(1) makes post-conviction proceedings the "exclusive means" for challenging not just a conviction but "the proceedings upon which" the conviction is based. Defendant argues that post-conviction relief would not be the "exclusive means" for challenging the proceedings if plaintiff were allowed to pursue her challenge to the proceedings on grounds broader than those listed in ORS 138.530(1) or without obtaining post-conviction relief first. Relatedly, defendant argues that allowing plaintiff to pursue her negligence action against him would "create an end run around the limits imposed by the legislature on the remedies available to criminal defendants whose counsel does not provide constitutionally adequate representation."

We first observe that the wording of ORS 138.530 (1)(a) undercuts defendant's argument. As defendant recognizes, that paragraph provides that post-conviction relief is available if the plaintiff can prove a substantial denial in the proceedings that "*rendered the conviction void*." *Id.* (emphasis added). Plaintiff was not convicted of murder; that charge was dismissed. And, in this action, plaintiff does not contend that her manslaughter conviction was rendered void by defendant's negligence. In fact, defendant was no longer representing plaintiff at the time of plaintiff's plea and conviction. And, as we have made clear, plaintiff

---

[4] ORS 138.530(1) provides:

"Post-conviction relief *** shall be granted by the court when one or more of the following grounds is established by the petitioner:

"(a) A substantial denial in the proceedings resulting in petitioner's conviction *** of petitioner's rights under the [United States or Oregon] [c]onstitution[s] ***, or both, and which denial rendered the conviction void.

"(b) Lack of jurisdiction of the court to impose judgment rendered upon the conviction.

"(c) Sentence in excess of, or otherwise not in accordance with, the sentence authorized by law *** or the unconstitutionality of such sentence.

"(d) Unconstitutionality of the statute making criminal the acts for which petitioner was convicted."

does not challenge her manslaughter conviction at all in this malpractice action.

As the court in *Drollinger v. Mallon*, 350 Or 652, 662-63, 260 P3d 482 (2011), emphasized,

> "*Stevens* is premised on the assumption that the legislature's scheme of protections for criminal defendants includes one or more mechanisms for correcting any wrongs suffered by a criminal defendant as a result of his or her attorney's constitutionally or statutorily inadequate representation."

However, that assumption is not warranted if that legislative scheme cannot right the wrongs suffered by the criminal defendant "as a result of his or her attorney's constitutionally or statutorily inadequate representation." And, in this case, plaintiff's complaint alleges that defendant's negligence caused her harm that the post-conviction relief process is not capable of correcting. In other words, the first *Stevens* policy consideration does not logically apply in this case precisely because at least some of the allegations in plaintiff's complaint do not allege that defendant's negligence contributed to her conviction or that her conviction was rendered void by his negligence.

In addition, plaintiff's complaint does not allege that the prosecutor's decision to seek a murder charge or the trial court's decision to revoke bail was improper. Of course, to succeed in her malpractice action, plaintiff will need to prove that defendant's negligence in providing the cellphone video to the prosecutor led to the prosecutor's decision to seek to indict her for murder and that the grand jury would not have indicted her for murder but for the cellphone video. However, that does not mean that plaintiff is alleging a substantial denial of her constitutional rights in the proceeding itself, and certainly not in a proceeding leading to conviction, as required for a post-conviction claim.

In this case, the inability of post-conviction proceedings to vindicate the harms that plaintiff alleges that she suffered as a result of defendant's malpractice is further illustrated by the fact that, under ORS 138.520, the remedies that a post-conviction court can order are confined to release, a new trial, a modification of sentence, and

"such other relief as may be proper and just." We are not aware of any relief that a post-conviction court could grant that would vindicate the harms that plaintiff alleges in her complaint.[5]

As this court stated in *Drollinger*, the import of *Stevens*'s first policy consideration is that "it would disregard [the] legislative policy choice [to provide protections to criminal defendants] to allow a criminal offender to obtain a judicial determination that he or she was wrongly convicted and obtain money damages by means of a legal malpractice case rather than through the procedures provided by the legislature." 350 Or at 662. That consideration does not apply in this malpractice case, because plaintiff does not seek a judicial determination that she was wrongly convicted.

The second consideration underlying this court's decision in *Stevens* is the court's recognition that, given how difficult it is to obtain a conviction in light of the protections provided to criminal defendants, convictions should be treated as settled unless overturned under established procedures. *Drollinger*, 350 Or at 663. That is, while the conviction remains valid, it would be "'inappropriate to treat a complaining convicted offender as having been "harmed" in a legally cognizable way by that conviction.'" *Id.* at 664 (quoting *Stevens*, 316 Or at 232).

Defendant argues that this consideration militates in favor of requiring plaintiff to plead and prove exoneration because plaintiff's malpractice claim is "closely related to and intertwined with her conviction" and litigating the claim will require relitigating settled issues, including the outcome of the grand jury proceedings and the propriety of her pretrial confinement. According to defendant, that litigation would amount to an improper collateral attack on the judgment.

---

[5] We emphasize, however, that nothing in this opinion is intended to suggest that a lawyer's pretrial or preconviction malpractice can never be vindicated by the post-conviction court's authority to grant other "proper and just" relief under ORS 138.520. We hold only that, in this case, at least part of the harm alleged to have been caused by defendant's malpractice cannot be vindicated in post-conviction.

As we have already explained, the gravamen of plaintiff's complaint is that, as a factual matter, defendant's negligence in providing the cellphone video to the prosecutor resulted in the grand jury indicting her for murder, the trial court confining her pretrial, and the video being widely disseminated. In her complaint in this case, plaintiff does not allege that she was wrongfully indicted or that the trial court erred in revoking her pretrial release. To succeed in her malpractice action, plaintiff will have to prove causation—that is, she will have to prove that the prosecutor would not have sought to indict her for murder and the grand jury would not have returned a murder indictment if not for defendant's negligence in providing the prosecutor with the cellphone video. But proving causation at trial would not necessarily entail "relitigating settled issues" pertaining to either the grand jury indictment or the trial court's decision to revoke plaintiff's pretrial release. The murder charge has been dismissed, and, in this malpractice action, plaintiff is not attempting to reopen it. And, to the extent that defendant is concerned that plaintiff will attempt to "relitigate settled issues" at trial, that concern can be addressed through pretrial motions and appropriate jury instructions.

Because the murder charge was dismissed and because, in this malpractice action, plaintiff does not claim that she was harmed by her manslaughter conviction, *Stevens*'s concerns about undermining the settled nature of a conviction also do not apply here. *See Drollinger*, 350 Or at 663 (explaining that a claim by a plaintiff in a malpractice action against post-conviction counsel, seeking damages for costs incurred due to counsel's negligence in conducting discovery, for example, would not depend on a finding that the plaintiff's conviction was improper and would not require relitigating the underlying conviction).

Finally, the third consideration driving the court's decision in *Stevens* was the court's desire to preclude convicted offenders from bringing malpractice actions on the ground that their lawyers failed to get them a "better deal"—meaning less serious charges or more lenient sentences or the like. As the court explained in *Stevens*,

"[a]lthough a plaintiff may wish that he or she had gotten a better deal, we do not consider it appropriate, outside of circumstances where the kind of relief that we have described is available under the post-conviction relief law, to treat a convicted offender as having been caused 'harm' in a legally cognizable way by any disposition of that person's case that was legally permissible."

316 Or at 232.

Defendant asserts that the parameters of plaintiff's theory of liability in this case are just as nebulous as those of the "better deal" theory of liability discussed in *Stevens*. In defendant's view, the harm that plaintiff claims to have suffered as a result of the murder indictment cannot be separated from the harm that flowed from the manslaughter charge and conviction. Specifically, defendant states that plaintiff alleges that the murder indictment led to "unwanted publicity," which caused reputational and emotional harm, "but so did the manslaughter charge, conviction, and incarceration." And, defendant argues, plaintiff alleges that she suffered harm from being subjected to pretrial confinement as a result of the murder indictment, but she received credit for time served when she was sentenced on the manslaughter conviction. Therefore, defendant argues, plaintiff's theory of liability reduces to a contention merely that her "situation" could have been "better," and, if such a theory were accepted, it would lead to indeterminate and potentially unlimited liability for criminal defense lawyers.

Defendant's equating of plaintiff's "situation" to the "better deal" theory of liability discussed in *Stevens* is misplaced. Arguing that plaintiff's "situation" would have been better but for defendant's negligence is different from arguing that defense counsel should have negotiated a "better deal" for the client. *Stevens* makes clear that the court was addressing "better deal" claims for which "the kind of relief that we have described * * * under the post-conviction relief law" is available. *Id.* at 232. Viewed in the light most favorable to plaintiff, plaintiff alleges that "unwanted publicity" resulted from defendant's negligence in providing the cellphone video to the prosecutor, which led to its wide dissemination, not that "unwanted publicity" resulted from the

manslaughter charge, conviction, and incarceration.[6] That claim is not akin to a contention that, but for defendant's negligence, she would have gotten a better deal.

Defendant also contends that plaintiff received credit for time served pretrial when sentenced for manslaughter. That argument goes to the extent of damages, not whether the complaint states a viable claim. Plaintiff's complaint alleges that defendant's negligence in providing the cellphone video to the prosecutor led to the murder charge and her pretrial confinement, which, in turn, caused her economic and emotional harm. Again, that claim is not akin to a contention that, but for defendant's negligence, she would have gotten a better deal.

For the same reasons, we do not share defendant's concern about indeterminate and potentially unlimited liability for criminal defense lawyers. In *Drollinger*, which involved a plaintiff's claim that his lawyer had committed legal malpractice in a post-conviction proceeding, the defendant made a similar argument. The court explained in that case that, to the extent that the plaintiff had alleged damages that were associated with the conviction itself or with the plaintiff's continued incarceration after conviction—such as loss of freedom and loss of income—the plaintiff must plead and prove that, if the defendant had performed competently in the post-conviction proceeding, he would have obtained relief in that proceeding. 350 Or at 667. In addition, plaintiff must plead and prove that he would have avoided reconviction in a subsequent proceeding on remand, and he would ultimately have been released from prison. *Id.* "On the other hand," the court continued,

> "to the extent that plaintiff alleges damages that do not depend on the certainty of success in obtaining relief

---

[6] We also observe that defendant's argument that the harm that plaintiff claims to have suffered as a result of defendant's negligence cannot be separated from the harm that flowed from the manslaughter charge and conviction goes to plaintiff's damages and not to the viability of her malpractice claim. In other words, to the extent that defendant is able to prove that part of the damage to plaintiff's reputation flowed from the manslaughter charge and conviction and not from defendant's negligence in providing the cellphone video to the prosecutor, that would arguably reduce the amount of damages payable by defendant, but it would not mean that plaintiff's complaint did not raise a genuine issue of material fact as to defendant's negligence.

> from his convictions, pleading and proving that plaintiff would have obtained relief from his convictions would be unnecessary. An example of such an allegation would be one that alleged that plaintiff incurred litigation-related costs that, except for defendants' negligence, he would not have incurred. The complaint that is before this court now appears to contain such an allegation."

*Id.* at 668. In this case, likewise, to the extent that plaintiff alleges damages that are unrelated to the conviction itself, the viability of plaintiff's malpractice claim does not depend on plaintiff alleging and proving that she has been exonerated of the crime of conviction. Cases in which the harm resulting from a criminal defense lawyer's negligence is not the conviction itself or does not flow from the conviction will arise infrequently enough that criminal defense lawyers are not at risk of "indeterminate and potentially unlimited liability." As previously noted, we continue to adhere to the rule in *Stevens* in cases involving attempts to recover damages for the harm that plaintiff suffered as a result of the criminal conviction. That rule applies in this case to the extent that plaintiff alleges harms that result from the manslaughter conviction.

Finally, defendant argues that plaintiff has not established that she has a "legally protected interest in not being negligently prosecuted on the elevated charge." Stated otherwise, defendant contends that, to prevail in this case, plaintiff must establish that a convicted person has a legally protected interest in avoiding an indictment on an elevated criminal charge, and, because she cannot do so, the trial court was correct to grant his summary judgment motion. That argument was not raised in the summary judgment motion. And, in any case, it again presumes that plaintiff's complaint challenges the prosecutor's decision to indict her on the elevated charge once he received the cellphone video and it misunderstands the nature of plaintiff's legal malpractice claim.

As we have discussed, viewed in the light most favorable to plaintiff, plaintiff's complaint alleges a legally protected interest in not being subjected to unwanted public ridicule and unnecessary pretrial incarceration, harms that plaintiff alleges that she would not have incurred but for defendant's negligence. Whether plaintiff will be able to

prove causation and damages at trial is not the issue raised by defendant's summary judgment motion. That motion only challenged the legal sufficiency of the negligence claim based on the undisputed fact that plaintiff was not exonerated of her conviction for manslaughter. The complaint does not directly challenge the prosecutor's decision to seek a murder charge or the grand jury's decision to indict her for murder. In other words, plaintiff's complaint does not allege that she was "negligently prosecuted." Rather, the complaint alleges that plaintiff was harmed by defendant's negligence in his representation of her.[7] As this court stated in *Rowlett v. Fagan*, 358 Or 639, 649, 369 P3d 1132 (2016), "[t]o succeed in a malpractice claim based on negligence, a plaintiff must prove a duty that runs from the defendant to the plaintiff, a breach of that duty, a resulting harm to the plaintiff measurable in damages, and causation—a causal link between the breach of duty and the harm." Or, stated more simply, causation requires "alleging that, 'but for' defendant['s] negligence, plaintiff would not have suffered the damages that [she] alleges." *Drollinger*, 350 Or at 667.

In this case, plaintiff alleges that defendant had a duty to exercise reasonable professional skill and judgment in representing her. Plaintiff alleges that defendant breached that duty when he provided the cellphone video to the district attorney without her knowledge or consent, and she alleges that that breach caused her to suffer both economic and noneconomic harm unrelated to her manslaughter conviction. Plaintiff's complaint, thus, is not premised on a legally protected interest in not being indicted for murder. Rather, it is premised on the duty of care in the attorney-client relationship "to act as a reasonably competent attorney in protecting and defending the interests of the client." *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 160, 843 P2d 890 (1992).[8]

---

[7] We observe that defendant refers throughout his brief to plaintiff's "negligent prosecution" theory of liability. As discussed in the text, that nomenclature mischaracterizes plaintiff's claim, which, as we have stated, does not rely on any action taken by the prosecutor in the criminal case, but, instead, is based on defendant's negligence in providing the cellphone video to the prosecutor without her knowledge or consent.

[8] We emphasize, however, that nothing in this opinion is intended to suggest our agreement with the fundamental premise of plaintiff's case, namely, that defendant breached his duties to plaintiff in providing the video to the prosecutor, an issue that defendant did not raise in his motion for summary judgment.

CONCLUSION

The trial court and the Court of Appeals concluded that plaintiff's legal negligence claim is foreclosed by this court's decision in *Stevens* because plaintiff had not been exonerated of any crime. As we have explained, the requirement in *Stevens* to plead and prove exoneration applies when the complaint alleges that the defendant's negligence caused or contributed to the conviction. In this case, we conclude that at least some of the allegations in plaintiff's complaint allege harms unrelated to her conviction for manslaughter, and, therefore, plaintiffs complaint raises genuine issues of material fact as to defendant's negligence. We hold that the trial court erred in relying on *Stevens* in granting defendant's motion for summary judgment, and the Court of Appeals erred in affirming that ruling based on *Stevens*.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

It will be plaintiff's burden as part of her case to establish that that conduct was inconsistent with the standards governing the work of criminal defense attorneys.